THE STATE OF TEXAS ET AL V. E. A. SCHLICK ET AL.

No. A-2. Decided April 5, 1944.
(179 S. W., 2d Series, 246.)

*Gerald C. Mann,* Attorney General, *Eugene N. Catlett,* Assistant Attorney General, and *James P. Hart,* of Austin, for petitioners.

It was error on the part of both courts to refuse to enter a judgment for the State, because of the failure of the plaintiffs to prove the extent of the damages to their land caused by the construction of the highways, as distinguished from damages caused by other factors, and in refusing to submit requested special issues relating to various independent factors contributing to the damage to the land after the construction of the highways. City of Austin v. Howard, 158 S. W. (2d) 556; Houston Chronicle Pub. Co. v. Martin, 64 S. W. (2d) 816; Panhandle & Santa Fe Ry. Co. v. Wiggins, 161 S. W. (2d) 501.

*Polk Shelton,* of Austin, *Carl G. Stearns, Richard L. Morley, Chas. W. Bell,* and *Fulbright, Crooker, Freeman & Bates,* all of Houston, for respondents.

In reply to petitioner's proposition, respondents cite: Burr's Ferry P. & C. Ry. Co. v. Allen 164 S. W. 878; Clark v. Mumford, 62 Texas 531; Calhoun v. Baize, 114 S. W. (2d) 634; State v. Malone, 168 S. W. (2d) 292.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

E. A. Schlick et al, respondents, sued the State of Texas and the State Highway Commission of Texas, petitioners, for overflow damages to 526.77 acres of farm land located two miles south of Gonzales. On a jury verdict, favorable to the Schlicks, the trial court rendered judgment in their favor for $32,300 with interest from August 1, 1934. That judgment was affirmed by the Court of Civil Appeals. 175 S. W. (2d) 688.

The land is on the Guadalupe River, in what is called the Guadalupe Relief Valley, and near the point of confluence of that river and the San Marcos. It lies south of the Guadalupe and upstream from this point of confluence. State Highway No. 29 extends southeasterly from Gonzales and generally parallel to the Guadalupe from the point where that river runs nearest

the Schlick farm to its confluence with the San Marcos. Northeast of the farm, state highway No. 112 extends from its junction with state highway No. 29 in a southwesterly direction, south of the Guadalupe and across the northwestern rim of the Schlick farm. These several locations, directions and distances may be more easily understood by reference to a plat appearing in the Court of Civil Appeals opinion, supra, at page 690.

The Schlicks alleged that the construction of these highways was completed in 1934; that in constructing them petitioners erected certain embankments and dumps to raise the highways above the surrounding lowlands in the watershed where lies their farm; but that highway No. 112, at the point where it adjoins their farm, was constructed along the natural level of the land for a distance of 1,800 to 2,000 feet so that it constituted a spillway; that these dumps and embankments impound the floodwaters of the Guadalupe and San Marcos so that what floodwaters cannot pass under and through the bridges are forced into and across the spillway above described, "in a seething turbulent torrent and are discharged with tremendous force onto plaintiffs' land lying in a southerly direction from said spillway." They alleged, further, that before the construction of these dumps and embankments and the spillway the overflow waters from the two rivers came into the Guadalupe Relief Valley and onto their farm in a shallow body of water of uniform depth, which moved slowly in a southeasterly direction, so that what did not find its way back into the Guadalupe River settled "into the soil gradually"; that, therefore, "such action by the flood waters, being so slow and gradual, did no damage whatever to the land and did not diminish its value for agricultural purposes * * * in the slightest degree." They alleged that after the construction of the dumps, embankments and spillway, however, "the torrential flood waters passing through said spillway, because of their great force and seething, swirling and turbulent nature tear into plaintiff's land, tearing away the fertile top soil and cutting great gulleys deep into said land and depositing sand, Johnson grass and other debris on other parts thereof," and because of the great volume of the water thus forced across their land much of the water remains in the gulleys which it cuts and "in the natural low places thereon, for long periods of time, making said land soggy and sour and destroying the crops thereon."

In their answer the petitioners specially denied (1) that the overflow of the Schlicks' land prior to the construction of the highways did no damage to the land and did not diminish its value for agricultural purposes; and (2) that the structures,

embankments and dumps in the two highways caused any change in the behavior of the floodwaters of the Guadalupe and San Marcos River. By trial amendment they alleged that respondents' land is a part of the flood plain of the Guadalupe River and has always been subject to overflow by the floodwaters of either the Guadalupe or the San Marcos and that, therefore, any damage suffered by their land or crops since the construction of the highways was caused by the natural overflow of the two rivers and would have occurred irrespective of the existence of the two highways. Specially, they alleged that no part of any damage suffered by the Schlicks was caused by the construction of highways 29 and 112 but that the damage, if any, was caused (1) "by the construction, maintenance and operation of the dam of the Texas Hydro-Electric Corporation, * * * and the embankments at the end of said dam"; (2) "by the construction, existence and maintenance of an artificial ditch connecting Stahl's Lake and the Guadalupe River"; (3) "by the construction, maintenance and operation of the power dam located on the Guadalupe River at the City of Gonzales"; (4) "by excavation in the natural banks of the Guadalupe River and the construction of levees by persons other than the defendants at the brick plant located in the vicinity of the City of Gonzales." They concluded with an allegation that "if plaintiffs' land has been damaged by any flood waters such damage occurred prior to the construction of Highways 29 and 112, and such damage occurred as a result of a flood occurring in July, 1932."

On the issues thus raised the trial court submitted to the jury only six special issues, which, with the jury's findings, were, in substance, as follows: (1 & 2) that 380 acres of the Schlick farm was damaged by reason of the construction of highways 29 and 112; (3) that the farm had no market value immediately before the construction of the highways; but (4) that it then had an "actual, intrinsic value" of $110.00 per acre; (5) that immediately after their construction it had no market value but (6) did then have an "actual intrinsic value" of $25.00 per acre.

Both by requested special issues and by exceptions to the charge the petitioners complained at their failure of the trial court (1) to confine the jury to a consideration of the damage caused by the highways and (2) to submit to the jury issues as to the damage to the land caused by the independent factors named in their answers.

■ As we understand the opinion of the Court of Civil Appeals, it holds that there was no merit in these complaints be-

cause the Schlicks alleged that the highway construction had caused all the damage to their land and because the evidence, "if not undisputed not conclusive," was sufficient to support the jury's finding that all the damage was caused by the highway construction. We disapprove that holding because it ignores the rule that a litigant is entitled to have all issues, pleaded and raised by the evidence, affirmatively presented to the jury, with his right to their submission determined before verdict and not afterward. Thurman et al v. Chandler et al, 125 Texas 34, 81 S. W. (2d) 489. And it is no answer to say that a finding on respondents' issues submitted to the jury amounted to a finding on petitioners' issues which were not submitted, as there is no certain way to tell what the answers to the unsubmitted issues would have been. Workmen's Loan & Finance Co. v. Dunn (Civ. App.), 134 S. W. (2d) 370. See, also, Dallas Railway & Terminal Co. v. Ector, 131 Texas, 505, 116 S. W. (2d) 683.

■ So if there was evidence in the record that factors other than the highway contributed to the damage to the land, it was reversible error not to submit the matter to the jury. There was testimony that the Schlick farm is in the floodway of the Guadalupe River and has always been covered with water in time of flood; that the floods of 1913, 1929, and 1932, which came before the construction of highways 29 and 112, covered substantially the same part of the farm as did the floods which came thereafter; that the floodwaters, over a long period before the building of the highways, had made two channels each about five feet deep and known as Cross Timbers Slough and Stahl's Lake Slough; and E. O. Schlick testified that floodwaters coming through Stahl's Lake Slough did "a little" damage to his land before the highways were built. There was also testimony that what was known as the H-5 dam was completed by the Texas Hydro-Electric Corporation in 1932, some two times upstream from the Schlick farm. It was constructed across the entire Guadalupe River Valley, with a steel and concrete dam in the main channel and earthen embankments on each end. In the flood of 1932 the embankment on the south end washed out, so that the floodwaters did not flow down the main channel of the river but went through the break in the embankment into Stahl's Lake Slough, thence across the Schlick farm. It was shown that on December 19, 1932, the Schlicks filed suit against the Texas-Hydro-Electric Corporation alleging that this breaking of the embankment permitted the floodwaters "to be suddenly, rapidly, and with great force and velocity to be turned loose out of the regular channel and river bed of said river and to rush madly, wildly and in great whirlpools

and raging torrents" over their farm so as "to wash and carry away all the productive soil on said three hundred acres of land and to wash and dig great holes in a large part of said three hundred acres of land, thereby completely destroying the value of said three hundred acres of land and rendering the same entirely useless for agricultural purposes"; that a great number of holes in sizes up to 40 feet in length and width and 6 feet in depth were dug so as to "irreparably, permanently and completely destroy the value of said land for agricultural purposes," to their damage in the sum of $24,000. That suit was pending when highways 29 and 112 were completed and was settled in December, 1934, for $1,200. It is claimed by the Schlicks, however, that the conditions complained of in that suit had been remedied before the construction of the highways by the correction of the faulty construction and operation of the Hydro-Electric Company's dams and levees so that the flood-waters were no longer obstructed thereby, and that they had completely restored the top soil on their land by planting grass and using fertilizers. Be that as it may, there was testimony by an engineer of the highway department that in time of floods the H-5 dam still forces water through Stahl's Lake Slough and onto the Schlick farm which would not otherwise go there.

We regard it as unnecessary to point out other evidence in the record from which a jury might conclude that factors other than the highway construction contributed to the damages which the Schlicks seek to charge exclusively to the petitioners. We have not attempted a comprehensive statement because what we have summarized makes it clear that the testimony raised those issues. What a jury may see fit to do with them is immaterial to the question before us. If they should find that other factors contributed to the damage suffered by the respondents, then the petitioners, to the extent of that contribution, are certainly not liable. Therefore, in another trial of this case these matters, if and as they are presented, should be submitted, in appropriate language, for the jury's consideration. City of Austin v. Howard (Civ. App.), 158 S. W. (2d) 556 (er. ref. want merit); Sun Oil Co. et al v. Robicheaux et al (Com. App.), 23 S. W. (2d) 713. We have before us the charge given in State v. Malone (Civ. App.), 168 S. W. (2d) 292 (er. ref. want merit), cited by the Court of Civil Appeals, and we find that the jury were carefully and explicitly instructed not to include damages to Malone's farm which may have been due to some cause other than the highway embankment. In other words, what should have been done here was done there.

■ In view of the argument made by petitioners under their first point of error that they were entitled to a judgment because the evidence did not show the exact damage contributed by each of the alleged independent factors, it is proper to say that we do not regard it as necessary in this case that the damages be precisely apportioned by the evidence as between the several contributing factors, provided, of course, the best evidence of which the case is susceptible as to those matters is offered. We think that the nature of this case is such that probably a proper apportionment cannot be made with mathematical nicety. As this court said in Owens v. Navarro Co. Levee Improvement Dist., 115 Texas 263, 280 S. W. 532, "The inability to distinguish from the evidence the exact amount of the damages caused by reason of the construction of the levee improvements from that which would have been sustained had such improvements not been constructed would not furnish a sufficient reason to deny a recovery. It is only where under the evidence the amount of the recovery is wholly left to speculation and conjecture that recovery will be denied." Obviously, any other rule might deny the Schlicks what they are justly entitled to recover, so we regard this as a case where "all that the law requires is that the best evidence of which a case is susceptible be produced, and if from such evidence the amount of damages caused by the defendant can be inferred or estimated by the jury with reasonable certainty, then the amount of such damages is for the jury." Powell Salt Water Co. v. Bigham (Civ. App.), 69 S. W. (2d) 788. And see Edens-Birch Lumber Co. v. Wood (Civ. App.), 139 S. W. (2d) 881 (er. dism.) ; 15 Am. Jur., Damages, secs. 21 and 23. The amount of the damages caused the Schlicks by the building of the highways can be fixed by the jury in the exercise of their sound discretion, under proper instructions from the court as to the exclusion of any damages caused by the alleged independent factors. 13 Tex. Jur., Damages, sec. 12.

■ Petitioners complain of certain testimony of two of the respondents as to the value of the Schlick farm to them, particularly as a home. That testimony should be excluded at the next trial, as it is not proper unless it appears that the land had no market or actual value. There being proof that the farm had no market value, the trial court properly admitted testimony as to its actual value, hence proof of its specific value to the owners was improper. International G. N. R. Co. v. Casey (Com. App.) 46 S. W. (2d) 669. Pioneer Building & Loan Association v. Compton (Civ. App.) 138 S. W. (2d) 884.

Because of what we have just said, we overrule petitioners' complaint that there was no legally admissible evidence as to the value of the Schlick land.

The last point complains at the refusal of the trial court to permit petitioners to cross examine respondent E. A. Schlick with regard to testimony given by him in an oral deposition as to the price he would take per acre for the Schlick farm, after he had testified on direct examination that the value of the farm to him after the construction of the highway was $25.00 per acre. Since we have held that that method of proving value was improper, under the facts of this case, we assume that the matter complained of will not occur at another trial, therefore it is unnecessary for us to decide the question.

The judgments below are reversed and the cause is remanded to the district court for a new trial.

Opinion adopted by the Supreme Court April 5, 1944.