**EDGAR v. SCHMIDT.**

No. 9804.

Court of Civil Appeals of Texas. Austin.

July 6, 1949.

Rehearing Denied July 23, 1949.

Smith & Pollard, and Harry S. Pollard, of Austin, for appellant.

Hart, Brown & Sparks, and J. H. Hart, of Austin, for appellee.

RAYMOND GRAY, Justice.

Appellant owned and lived in a two-story stucco residence located in the City of Austin. The residence was probably more than fifteen years old. Sometime during the fall of 1945, appellant noticed there was a crack on the outside of the house and at its northeast corner. After this appellant contacted appellee, a contractor, and appellee, with his son Walter Schmidt, came to the residence for the purpose of inspecting it. The floors were so near the ground that appellee could not get under the house to make the inspection, and he told appellant that it would be necessary to tunnel under the house in order to get under it, examine its condition and find out what was wrong. After some negotiations between the parties, an oral agreement was made between them. Appellee dug a tunnel under the house and thereafter did work which consisted of putting in new sills, cement or concrete foundation work and other repairs. Appellant made two payments of $500 each to appellee, and this suit was brought by appellee against appellant to recover the balance alleged to be due under the oral agreement.

Appellee alleged that on or about June 1, 1946, he and appellant made an oral agreement whereby appellee agreed to perform work and labor and to furnish materials in making repairs to appellant's residence and to strengthen and repair the foundation thereof; that because it was necessary to tunnel under the residence to determine the condition existing under the floors, it was not possible to then determine the cost of such work and repairs, and appellant agreed he would pay appellee a reasonable sum for the labor performed, and materials furnished and other necessary and reasonable costs.

Appellant answered by a general denial and alleged that on or about November 4, 1946, appellee, acting through his son Walter Schmidt, orally agreed to perform the services and furnish the materials in making the repairs to appellant's residence for approximately the sum of $1,920. And, by cross-action, appellant sought to recover damages for the failure of appellee to repair the foundation in such manner to prevent the residence from settling and cracking, which failure, it is alleged, has resulted in damage to appellant in the sum of approximately $2,060.34.

The trial was to a jury, and the jury found that: (1) appellant agreed to pay appellee a reasonable sum for the labor done, materials furnished, and for all other costs reasonably incurred in making the repairs, alterations and additions to appellant's residence which appellant requested be made; (2) appellee made the repairs to appellant's residence with reasonable skill and in a good and workmanlike manner; (3) a reasonable charge for the labor, materials and supervision supplied by appellee in making repairs, alterations and additions to appellant's residence is $3,129.22; (4) appellee did not, through his son Walter Schmidt, on November 4, 1946, orally agree to make repairs to appellant's residence to prevent it from settling and cracking, for the stipulated total sum of $1,948.10; (5) the work and labor actually performed by appellee on appellant's residence did not cause damage to such residence. In the event issue five was answered "Yes", the jury was told to answer issue six. Issue six asked what sum of money, if any, if paid now, will fairly and reasonably compensate appellant for the damage, if any, sustained by him as a direct result of the failure, if any, of appellee to make repairs to appellant's residence "to prevent it from settling and cracking?" This issue, of course, was not answered.

Upon the jury's findings the trial court rendered judgment for appellee for $2,129.22.

The evidence shows that repairs and additions, other than the foundation work, were made to appellant's residence by appellee.

Error is assigned to the trial court's refusal to submit appellant's requested issues two and five. These issues are:

"2. Do you find from a preponderance of the evidence that plaintiff, Richard Schmidt, neglected or failed to make such repairs to the Joe Edgar residence as to prevent such residence from settling and cracking?"

"5. Do you find from a preponderance of the evidence that defendant, Joe Edgar, was damaged by reason of the failure, if any, of plaintiff, Richard Schmidt, to make

such repairs to the Joe Edgar residence as to prevent such residence from settling and cracking?"

In his brief appellee concedes that he orally agreed to make repairs to appellant's residence to prevent it from settling and cracking, that there is no dispute as to this issue, but says the dispute is whether the agreement was the compensation to be paid for the work was a stipulated sum or was the reasonable cost of doing the work. It is true there is a dispute in the record as to the alleged agreement of appellant and Walter Schmidt of November 4, 1946. Appellant said the agreement then reached was that the total charge for the work would be $1,920. Walter Schmidt said at that time he told appellant that the total cost for the work and materials would amount to about $3,500, but that he could not make an accurate estimate of the costs. At any rate, this conversation, or the alleged agreement, as to costs, was after the agreement to make repairs was made and after the work was begun. We think issue 4, as submitted, and the jury's answer thereto, went no further than to determine the dispute against appellant.

Appellant, by his cross-action, sought to recover damages caused by the failure of appellee to repair his residence in such manner as to prevent it from settling and cracking. Appellee admits the purpose of the oral agreement was to make such repairs.

Appellant testified that after appellee stopped work there were new cracks in the house; that "the house is bucking up, the way it is, it is bursting the house all on the inside. The doors won't close." Appellant's wife said that since appellee stopped work, the doors of the house and the cabinet doors won't close; when the wind blows, it is necessary to prop most of the doors, and the floors are buckling in the center. That before the work started, the doors would close and the floors were level. Appellant's daughter, who lived in the house before the work started, during its progress, and who has been there frequently since, said that before the work started there were no cracks on the inside of the house; that the floors

were level and the doors and windows worked perfectly; that now the doors will not close; there are cracks in the house and they are getting wider, and that the floors are not level. Mr. Marvin Turner, a consulting engineer, said he had examined appellant's residence after appellee had stopped work and that the foundation was inadequate. Mr. Achilles, a contractor, who had done repair work on the residence after appellee had stopped work, gave evidence similar to Mr. Turner's.

We think that requested issues two and five were raised by both the pleadings and the evidence, and, unless the submitted issues were sufficient to meet the requests, their refusal presents reversible error.

We do not think submitted issue two was sufficient to meet the requests, because, even though the work done by appellee was done with reasonable skill and in a good and workmanlike manner, it would not necessarily mean that such work was sufficient or did, accomplish the admitted purpose of the oral agreement—preventing the residence from settling and cracking. Neither does submitted issue five satisfy the requests, because, even though the work actually done did not cause damage to the residence, that would not necessarily mean the work prevented the residence from settling and cracking. We think that, in the sense the word was used in submitted issue five, "cause" means to bring about or to produce the damage complained of, while "prevent" means to keep from happening by taking the necessary measures. Generally, the word means hindering, checking or stopping.

The work may have been done in such a skillful manner as to not cause damage, and not have been sufficient to prevent the residence from settling and cracking.

We do not think the submitted issues were sufficient to meet the requests, and that the trial court committed reversible error in refusing to submit requested issues two and five. State v. Schlick, Com. App., 142 Tex. 410, 179 S.W.2d 246; Schuhmacher Co. v. Holcomb, Com. App., 142 Tex. 332, 177 S.W.2d 951.

We have reached the conclusion that this cause must be reversed because of the failure of the trial court to submit requested issues two and five, for which reason we do not think a discussion of appellant's other assignments is necessary.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.