STATE of Texas, et al., Appellants,

v.

A. L. RANKIN, Appellees.

No. 459.

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 4, 1969.

I. M. Singer, City Atty., Robert E. Young, Asst. City Atty., Corpus Christi, for appellants.

Butler, Schraub & Gandy, Roger Butler, Corpus Christi, for appellees.

## OPINION

NYE, Justice.

This is a cause of action by the State against the appellees A. L. Rankin, et al, to condemn a strip of land fronting on Gollihar Road in Corpus Christi for a crosstown expressway. The landowners made proper stipulations and admissions so as to confer jurisdiction to the County Court at Law No. 2 in Nueces County, leaving only the issue of damages to be tried. The special issues submitted by the trial court, were confined to the market value of the land taken and the damages to the remainder. Based upon the jury findings, judgment was rendered in the amount of $45,-000.00 representing the value of the land taken. The jury found no damages to the remainder. The State of Texas has appealed.

Appellees' land is a strip fronting on Gollihar Road for a distance of 1290 feet. It has a depth of 145 feet, containing 191,399.2 square feet or 4.397 acres. It is in a very well developed residential area and lies between two very heavy travelled arterial type streets. On the west, Gollihar dead ends into Greenwood Drive which is the second longest east-west thoroughfare in Corpus Christi. Future plans concerning Gollihar call for it to be 60 feet wide. The subject property lies close to a developing commercial and industrial area. A small portion of appellees' land was zoned industrial and the balance residential. The part taken by the State cut through this strip of land.

Appellees' expert witness testified that the best use for all of appellees' land was determinable by its location, its accessibility to streets and the demand for this kind of property in the area. Its proximity to a

large residential area and its shape, contributes to its future use and value. The witness testified that the land was adapted for use as professional offices, such as doctors and neighborhood business, drive-in groceries and service type businesses that are used by people who live in the residential area. The witness testified in detail that the types of business that depend on large residential areas for support are businesses such as barber shops, dairy stores, neighborhood bakeries, paint stores, beauty shops, plumbing companies, T.V. repair shops, upholstery and rental service companies. He testified finally that its highest and best use was for commercial and business functions. This testimony was received without objection. At the close of all the evidence, appellants filed a motion to strike this testimony and to suppress all of the evidence concerning the value of the land where its use was predicated on a business or commercial use. The thrust of appellants' complaint on appeal is that since the bulk of the property owned by the appellees is residentially zoned, it was error for the court to refuse to strike the evidence of value of a higher and better use than was permitted under existing zoning restrictions, specially since other evidence indicated that re-zoning was once denied to appellees.

A small portion of appellees' property was zoned industrial and the balance zoned "R-1b, single family residence". Prior to the subject condemnation, appellees entered into a contract for the sale of a portion of their property to the March Corporation who proposed to erect a drive-in grocery type business. The contract duly executed by all parties was made subject however to a re-zoning of a part of appellees' property to fit this particular classification of business. The zoning was refused, according to one of the witnesses, because the people in the area did not want the sale of beer on the premises.

Both parties cite City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808 (1954). There the Supreme Court, although unwilling to lay down a hard and fixed rule concerning market value, did say that consideration may be given to a use for which property is reasonably suitable and adaptable even though the use is presently prohibited by a zoning ordinance. In determining this question the Court left the question of the receipt of such evidence to the sound discretion of the trial judge. "If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. *On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available.*" (Emphasis supplied.)

■ The record contains more than 400 pages of testimony and numerous exhibits. The expert witnesses for both parties testified at great length. Much of appellants' expert witness' testimony was confined to comparable values that had already been zoned business. Although this witness' testimony as to the value of the subject property was based on its present existing zoning use, the witness did testify that its highest and best use was for home occupied type businesses that would not be in conflict with the present zoning. Asked whether or not he would consider that there would be a reasonable probability that the zoning would be changed on this property? His answer was limited to the statement: that "buyers won't pay a lot of money on the hope that zoning will be changed in the future." He stated that generally in his opinion buyers do not purchase property subject to zoning changes.

On the other hand, appellees' expert witness testified positively. He stated that in all reasonable probability the balance of

appellees' land will be properly zoned in the future. He testified again without objection, that based upon his experience in platting of shopping centers and commercial businesses, this type of property would be zoned for commercial use. On another occasion in his testimony the witness said that the property would, in all reasonable probability, be re-zoned to conform to business and commercial use just as soon as the condemnation suit was over; that in his opinion the landowner would get any zoning that is applicable; that in condemnation suits, you do not get the zoning cleared up until the expressway route is finally determined. We hold that the trial court did not abuse its discretion in permitting evidence of the prospective use of appellees' property. There was ample evidence that in all reasonable probability, existing restrictions may be lifted within a reasonable time. City of Austin v. Cannizzo, supra; Henslee v. State, 375 S.W.2d 474 (Tex.Civ.App.—Dallas 1963); State v. Clevenger, 384 S.W.2d 207 (Tex. Civ.App.—Houston 1st, 1964, n.r.e.); Jacobs v. State, 384 S.W.2d 438 (Tex.Civ. App.—Ft. Worth 1964, n.w.h.); 4 Nichols on Eminent Domain, § 12.322(1) at page 243; Rayburn's Law of Condemnation, Sec. 92.

■ Appellants next complain that the landowner was permitted to testify as to the value of his land which was arrived at in part, and based upon other sales of land in the area. On cross-examination the landowner was unable to clearly identify the various sales of other property. Therefore appellants say that his testimony is hearsay and that he only placed an intrinsic value on his land.

The owner of real property is ordinarily held competent to testify as to its value, if he knows the market value of his land on or about the date of the taking. See State v. Dehnisch, 437 S.W.2d 46 (Tex.Civ.App. —Corpus Christi 1968, n.w.h.), and the authorities cited therein on a similar point of error. The appellee testified that he had

been a resident in the city of Corpus Christi for 38 years and he owned the subject property since 1935. He stated that he had studied his property over the years and had sold portions of his property. He testified that he had kept up with the domestic building activity in and around the area. Some of the commercial property close by had come from his own property which he had previously sold, he said. He was then asked the question:

"Q Now then, based upon your history and knowledge of the property, I will ask you if you know that as of December 30, 1966 (the date of taking) what the fair market value of the property was which has been taken here.

A $175.00 per foot.

Q And the total amount?

A $55,000.00."

■ The State made no objection to this testimony until they filed their motion to strike all of landowner's evidence of value at the close of the case. If a landowner states that he knows the value of his lands, his testimony is admissible. The fact that the State on cross-examination had elicited doubt and uncertainty from him, only goes to the weight of his testimony with the jury. But such weakness does not destroy the original admissibility of the evidence, or render it worthless and subject to being stricken as proposed by the State. State v. Dehnisch, supra. These points of error are overruled.

■ Appellants, in their cross-examination of the appellee landowner tried to further discredit his testimony relative to his knowledge of land values. On re-direct examination the landowner attempted to introduce into evidence the March Corporation contract for the purpose of showing that he had a recent bona fide offer of sale of a portion of his property for $205.-55 a front foot. The appellees' attorney stated in offering the exhibit, that the

landowner had been challenged by the State relative to his testimony of the value he placed on his land, and that in order to meet this challenge they offered this fully executed contract. The contract had never been fully consummated because the attempted zoning failed. The State objected which is the basis for the appellants' next point of error.

The court permitted the exhibit to be admitted for the limited purpose of showing, not the value of any particular piece of land, but to show that the landowner took the subject contract under consideration in arriving at the value he placed on his property at the present time. We hold that such was not error. Both parties cite Robards v. State, 285 S.W.2d 247 (Tex. Civ.App.—Austin 1955, n.r.e.). Although this case is not precisely in point, the Court in Robards held that there was no evidence that the contract was a sham or a simulated contract and that although the contract was not fully consummated, it was a binding obligation on all parties and therefore was admissible. The present contract was likewise binding on all parties but subject to obtaining proper zoning. On cross-examination and throughout the trial the State made much to-do about the failure of the zoning of this property. The State fully developed the fact that the March Corporation did not want the property unless it was re-zoned. They further showed that the rezoning of the property was never accomplished and the escrow monies were returned. We hold that under the limited purposes placed by the court on the admissibility of the evidence, the instrument was admissible. In any event the State has not demonstrated harm and has waived the complaint about such testimony since they established on cross-examination the same facts about which they now complain. Butterfield Sales Co. v. Armstrong, 278 S.W.2d 194 (Tex.Civ. App.—Amarillo 1954, n.r.e.). Rule 434, Texas Rules of Civil Procedure.

Later the State attempted to introduce into evidence another contract executed by the landowner wherein he had purportedly placed a value of $30,108.00 on the land to be taken. After Mr. Rankin had testified that his property was worth $55,000.00, the State attempted to introduce this contract into evidence for the purpose of impeaching the landowner's testimony as to the value he had placed on the land. On voir dire examination and outside the presence of the jury, it was developed that the contract was made during the negotiations by the State for the purchase of this land from the landowner. The landowner had executed the contract but had made certain oral qualifications and conditions relative to its delivery and acceptance by the State. When these conditions were not met by the condemnor, the contract was returned to the landowner unsigned.

The law is settled that evidence concerning a bona fide written offer to sell or purchase land which amounts to an offer or option to sell or buy is not admissible upon the trial in condemnation. Any attempt by either party to negotiate and compromise may be done without the fear that such negotiations will be used against them in a subsequent suit. Where a contract was not fully executed and not subject to specific performance it is not admissible. Such a contract does not meet the test of the willing seller-willing buyer concept. Gomez Leon v. State, 426 S.W. 2d 562 (Tex.Sup.1968). We hold that the subject contract was only an attempt to compromise through negotiations and therefore was not admissible. Rayburn's Texas Law of Condemnation, Sec. 131. Appellants' point is overruled.

We have reviewed all of the evidence and appellants' points of no evidence, insufficient evidence and against the greater weight and preponderance of the evidence and they are overruled.

Judgment of the trial court is affirmed.