CITY OF FORT WORTH, Appellant,

v.

Theodore W. BEAUPRE, et al., Appellees.

No. 18463.

Court of Civil Appeals of Texas, Fort Worth.

June 4, 1981.

Rehearing Denied June 25, 1981.

Paul C. Isham, City Atty., and Michael H. Bailey, Stephen R. Alcorn, Asst. City Attys., Fort Worth, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and S. G. Johndroe, III, Fort Worth, for appellees.

## OPINION

HUGHES, Justice.

This is a condemnation suit wherein the City of Fort Worth claims that numerous errors committed by the trial court resulted in an excessive award to the condemnees, Dr. Theodore W. Beaupre and Dr. Robert E. Beaupre. Suit arose by the City's taking of fee simple title to 5,911.85 square feet of land which had previously been a portion of a lot consisting of 18,267 square feet, and the reduction in value of the 12,355.15 square feet of land which remained.

We affirm.

The Beaupres are two dentists who purchased the subject property in 1969. It consisted of 18,267 square feet of unimproved real property located on the northwest corner of Camp Bowie Boulevard and Clover Lane in the City of Fort Worth, Tarrant County, Texas. It was zoned "F" commercial but subject to deed restrictions limiting its use to single family dwellings.

In 1978, pursuant to its eminent domain powers, the City condemned a portion of the subject property constituting 5,911.85 square feet. Three disinterested freeholders were appointed as special commissioners to assess the value of the property taken and the amount of damages, if any, or special benefits, if any, to the property remaining. The commissioners awarded the Beaupres $18,800.00 as compensation. The Beaupres filed an objection to the award of the commissioners and thereafter withdrew the award from the registry of the court without prejudice to their right to object to the amount of damages assessed.

Trial was then had before a jury only as to the amount of compensation due the

Beaupres. In response to special issues the jury found that: the fair market value of the 5,911.85 square feet taken was $5.00 per square foot before condemnation; the fair market value of the 12,355.15 square feet which remained was $5.00 per square foot before condemnation; and the fair market value of the 12,355.15 square feet which remained was $.50 after the condemnation.

On the basis of the jury's findings the trial court rendered judgment that the Beaupres recover the sum of $85,157.42 minus the $18,800.00 which had already been withdrawn.

■ The City's first points of error assert that the trial court erred in refusing to submit one of the City's two alternative instructions relating to the definition of "fair market value" and the existence of deed restrictions in relation thereto because, as a matter of law, there were, at the time of trial, certain duly recorded deed restrictions on the subject property which limited its use to residential uses and consequently affected the property's fair market value.[1]

The definition submitted by the trial court was approved by the Texas Supreme Court in *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954) and reads as follows:

"You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy it, but is under no necessity

of buying, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future."

It was developed at trial that there are many commercial establishments in the immediate vicinity of Camp Bowie Boulevard where the subject property is located. There was also testimony to the effect that many of the commercial establishments are built upon properties which were sold with deed restrictions similar to those found in the Beaupres' deed. That the "highest and best use" of the property is commercial is supported by testimony as is the contention that the "highest and best use" is residential. The record is replete with instances where the existence of the deed restrictions was brought to the attention of the jury.

The existence of the deed restrictions has never been challenged. In fact, in 1942 the very deed restrictions under consideration here were upheld despite the presence of commercial establishments in the area. *Scaling v. Sutton*, 167 S.W.2d 275 (Tex.Civ. App.—Fort Worth 1942, writ ref'd w.o.m.). The issue of removal or abandonment of the deed restrictions is not before us as it was in *Scaling*. What is before us is the matter of just compensation of the condemnees.

The instruction submitted by the trial court apprised the jury that consideration should not only be given to the presently existing deed restrictions but consideration should also be given to the reasonable prob-

1. The City's requested instructions read as follows:

(1) "The term 'market value' as used in the following Special Issues, is meant to be the price the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of doing so, taking into consideration all of the uses to which it is reasonably adapted and for which it either is or in all reasonable probability will become available within the reasonable future. The existence of the valid deed restrictions would prohibit the use of the property for commercial uses at this time, and would mean that a commercial use is a use which is not reasonably adapted nor a use which is reasonably availa-

ble within the reasonable future, and would also mean that the property is to be valued for residential use."

(2) "You are instructed that the term 'market value' is the price which the property would bring when it is offered for sale by one who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future. In this connection you are instructed that if you find that certain deed restrictions are applicable to the subject property, you must take such restrictions into consideration in arriving at your determination of market value."

ability, if any, that the subject property would become available for commercial use in the reasonable future.

In view of the commercialization of Camp Bowie Boulevard and the important objective of fairly compensating the landowning Beaupres for the loss of their investment, we hold that the trial court did not abuse its discretion by instructing the jury in the manner it did. Tex.R.Civ.P. 277.

We overrule the City's first two points of error.

■ The City's third point of error is that the trial court erred in admitting into evidence sales of improved property as "comparable sales" because the subject property was unimproved and, as a matter of law, improved property cannot be compared to unimproved property as a basis for proving the fair market value of the unimproved property in a condemnation suit.

On direct examination the Beaupres' expert presented nine sales of land, which he characterized as "comparable" to the subject property, as a basis for his opinion that the subject property had a fair market value of $5.00 per square foot before condemnation. Five of the "comparable" properties were sold with improvements. The remaining four properties were vacant. The City objected to the admission into evidence of each of the sales of improved properties.

It has been held that the value assigned to improved properties in recent sales is not admissible when the property at issue is unimproved because the test of similarity is not met. *City of Austin v. Cannizzo, supra,* 267 S.W.2d at 816. Sales of improved properties are thought to be of no assistance to the jury in determining the value of unimproved properties. *State v. Chavers,* 454 S.W.2d 395 (Tex.1970). Some courts may disagree. *See: Southwestern Bell Tel. Co. v. Ramsey,* 542 S.W.2d 466 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.) and the cases cited therein.

In any event, in view of the fact that four sales of unimproved property were introduced and one of these properties carried a valuation of $5.14, we hold that any error

in admitting the sales of improved properties is not reversible error.

We overrule the third point of error.

■ The City's fourth point of error asserts that the trial court erred in admitting testimony into evidence as to an unaccepted oral offer to purchase the subject property made to one of the Beaupres because such offers are not competent evidence upon which to base an opinion of fair market value.

We are in complete agreement that unaccepted offers to purchase are not competent evidence of fair market value. *Hanks v. Gulf, Colorado & Santa Fe Railway Company,* 159 Tex. 311, 320 S.W.2d 333 (1959). The issue then is whether the admission of this testimony constitutes reversible error.

On cross-examination Theodore W. Beaupre was asked about the basis for his opinion as to the value of the subject property. He responded that his opinion was based on an appraisal he had commissioned. Mr. Beaupre's knowledgeability as to the meaning of "fair market value" was also challenged. It was not until redirect examination (in response to this cross-examination) that Mr. Beaupre was asked if he had any other basis for his opinion. He then testified that a pizza franchise had made an offer to purchase the subject property for $65,000.00 in the early 1970s shortly after the subject property had been purchased by the Beaupres.

■ We hold that no reversible error was committed by the admission of the testimony as to the unaccepted offer. Mr. Beaupre's testimony that he had primarily based his opinion on the appraisal report sufficed to render the impact, if any, of the "offer testimony" inconsequential.

We overrule the fourth point of error.

■ In its fifth point of error the City contends that there was no evidence, or in the alternative insufficient evidence, to support the jury's findings that the subject property had a fair market value of $5.00 per square foot immediately before the date of taking and that the remainder had a fair

market value of $.50 immediately after the date of taking.

Although the Beaupres' expert testified as to supposedly incomparable sales of improved properties he also testified as to comparable sales of unimproved properties at prices ranging from $2.60 to $5.14 per square foot. Based on his assessment that commercial usage was the "highest and best use" of the property the Beaupres' expert testified that the fair market value of the subject property was $5.00 per square foot before the taking. The expert further testified that the limited shape compounded limited access practically destroyed the usability of the remaining 12,355.15 square feet to anyone except the adjoining landowners. Based on these factors the expert testified that the fair market value of the remaining property was $.50 per square foot.

We hold that there was sufficient evidence to support the jury's verdict.

We overrule the fifth point of error.

■ The City's contention, in its sixth point of error, that tort damages are not recoverable in a condemnation suit is uncontroverted. *Texas Electric Service Company v. Campbell,* 161 Tex. 77, 336 S.W.2d 742 (1960). The City complains, however, that by admitting certain testimony and photographs, purportedly relating to physical injury to the remainder, the trial court committed error because the jury's verdict was affected by incompetent evidence.

Physical injury to the remainder was never made an issue in the case and any allusion to physical injury to the remainder was *de minimus.* A study of the record and the offers of proof made by the Beaupres' counsel reveals that the evidence complained of was introduced to show the "damage to the remainder", which in the context of case as it was presented to the jury would be taken to mean the extent of the taking by the City.

We overrule the sixth point of error.

The City's seventh point of error asserts that the trial court erred in refusing to admit the entire appraisal report of the City's expert witness. It is the City's con-

tention that the jury should have been given the opportunity to review the entire report in order to place the expert's statements which were elicited on cross-examination in the proper context. Even if it is conceded that the refusal of the trial court to admit the entire report was error, we fail to see how the City was sufficiently harmed so as to warrant reversal. The City itself does not contend that this error alone constitutes reversible error.

The City's eighth point of error is that the trial court erred in refusing to include in its charge to the jury a specific instruction that the burden of proof was on the Beaupres.

■ In reviewing the record we have observed that the City objected to the absence of a special instruction as to the burden of proof being on the Beaupres but failed to tender a requested instruction. We hold, therefore, that the City has waived this point. A party complaining of the omission of an explanatory instruction must have tendered a correctly worded instruction and requested its submission. An objection alone is insufficient. Tex.R.Civ.P. 279; *Adam v. Harris,* 564 S.W.2d 152, 155 (Tex. Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

We overrule the City's eighth point of error.

■ In its ninth point of error the City asserts that the trial court erred in asking the Beaupres' expert witness questions as to the witness' method of valuing three of the improved properties which were offered as comparable in value to the subject property. As the witness was testifying the trial court asked the witness whether he based his valuation on the land or the improvements. In all three instances the witness replied that he "used the land only". At no time did the City object to the trial court's questions. The City argues that the trial court commented on the weight of the evidence by cross-examining the witness before the jury.

The following passage from *Quintero v. Citizens and Southern Factors,* 596 S.W.2d

277, 282 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ) is pertinent:

> "An objection to a comment by the trial judge on the weight of the evidence must generally be made at the time of the occurrence if the error is to be preserved for appellate review, unless the comment is of such a nature that it could not be rendered harmless by proper instruction...."

If a proper objection had been made the trial court could have corrected any undue emphasis which the jury gave to his questions by an instruction that the questions and the answers thereto only went to the admissibility of the testimony and not to the weight to be given the evidence.

We hold that any error committed by the trial court in asking the questions was waived by a failure by the City to object.

We overrule the ninth point of error.

There being no reversible error shown we affirm the judgment of the trial court.