STATE of Texas, Appellant,

v.

Edward C. KINSLOE, III, and Wife, Appellees.

No. 13–86–085–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

Phillip R. Lerway, Atty General's Office, Austin, Juan Zaragosa, Highway & Dept. of Public Transp., San Antonio, for appellant.

William H. Robinson, San Antonio, for appellees.

Before NYE, C.J., and UTTER and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a valuation award in a condemnation case. The suit concerned the taking of a portion of a lot on which appellees had their residence, and a portion of an adjoining lot which appellees used to store nursery stock for their land-scaping and nursery business. Appellees did not contest the State's right to condemn their property. The only issue in the suit was the amount of compensation due appellees as a result of the takings. Trial was to a jury which made findings on the amount of compensation due appellees for each lot. This appeal concerns only the jury's findings regarding the compensation for the nursery lot. We affirm.

The subject property is within the city limits of Live Oak, Texas, a suburb of San Antonio, Texas. The property taken by the State is 6,098 square feet of a triangular-shaped lot containing 13,634 square feet, and is located approximately one block off of Interstate Highway 35. It was taken on March 22, 1983, by the State Highway and Public Transportation Commission in order to build a ramp for a crossover on Interstate 35. At trial, the State's valuation expert testified that $9,369.00 would be fair compensation for the taking of this property. The jury found that the value of the strip of land taken was $21,869.00; that the value of the remaining portion of the lot, before condemnation, was $22,608.00; and that the value of this portion, after condemnation, was $7,508.00. Thus, the jury awarded the Kinsloes (appellees) $36,969.00 as compensation for the taking.

The primary question on appeal is whether the market value of a piece of property subject to condemnation may be based on a highest and best use which is permissible under applicable zoning regulations, but is prohibited by private deed restrictions. The State's position is that the highest and best use of the property is residential, whereas the Kinsloes argue it is commercial. On appeal, the State complains, at length, that the trial court erred in admitting evidence as to the value of the property based on a commercial use, as the admission of this evidence was a *de facto* ruling that there was a reasonable probability that the restrictive covenants applicable to this property would be lifted within a reasonable time because there was no evidence to warrant such a finding.

The Kinsloes purchased the lot adjacent to the subject property in 1971, and used it as their residence. In 1976, they purchased the subject property, and used it as a "nursery holding area" to store plants and shrubbery. They operated their nursery business out of their home. They did not conduct a retail sales operation on the lot, nor did they have any signs posted there. The lot was only used to store plants. Before they bought the lot, it had been used as a dumping ground. After the Kinsloes purchased the land, they leveled it, cleaned up the debris, shaped the trees, erected a redwood fence around it, and installed a driveway, a portable building, and a watering system. They received a special variance from the City to build the fence ten feet from the street instead of the required twenty-five feet.

Mr. Kinsloe testified that they did not know this lot was subject to deed restrictions when they bought it, and they did not become aware of the covenants until this suit arose. He testified he had personal knowledge of six other businesses in close proximity to his lot which were being operated in violation of the deed restrictions. Those six businesses included a daycare center, a fix-it-shop, a jewelry sales business, a ceramic shop, a real estate office, and a construction business (with trucks and front-end loaders stored on the property). All of these businesses were operated out of residences and did not display any signs.

Mr. Kinsloe testified that he had operated his landscaping business from 1976 until 1983, the time of the taking, and no one in the neighborhood had ever objected. On cross-examination, he stated that he had not gotten a waiver of the restrictive covenants from the grantor, nor had fifty-one percent of the other property owners of the subdivision affirmatively agreed to his commercial use of his lot as required by the covenant.

Tom McNeil, an appraiser and real estate broker, qualified as an expert witness and testified on behalf of the Kinsloes. He testified that there had been increased commercial development in this area because it was located within the "San Antonio-Austin Corridor" along Interstate 35. He stated that property values in the area had been steadily increasing. McNeil testified that there were widespread violations of these deed restrictions, and that he considered the covenants "moot." In his opinion, the use to which the Kinsloes were putting their property was its highest and best use. He stated affirmatively that, in his opinion, "in all probability these restrictions will be lifted" within the reasonable future. He testified to five sales of other property which he considered comparable to the subject property. These values were predicated on the commercial use of the properties.

The Kinsloes also presented the testimony of an attorney who qualified as an expert in this area of law. He explained the deed restrictions and their operation and effect. He explained to the jury that one could sue to have these restrictions invalidated if there were longstanding violations in which the other property owners had acquiesced. He also stated his opinion that the State "does not have the right to enforce restrictions," and that it was for the property owners to enforce them. He opined that, if the restrictions were being violated and the property was being put to its highest and best use, the condemning authority is not entitled to claim advantage of the private deed restrictions in setting the highest and best use of the property.

The instant case is controlled by *City of Austin v. Cannizzo*, 153 Tex. 324, 267 S.W.2d 808 (1954). That case involved a condemnation proceeding in which the condemnor complained that the trial court erred in admitting and allowing the jury to consider evidence regarding the subject property's adaptability for commercial use where commercial usage was prohibited by valid existing city zoning restrictions. The Supreme Court held that the trial court did not err in allowing the jury to consider the value of the property for commercial purposes in the face of such zoning restrictions. The Court quoted from:

Nichols on Eminent Domain, 2nd Edition, Vol. 1, p. 669, sec. 219: "When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration."

The Court announced the following test to be applied in determining the admissibility of such evidence:

At the same time, we cannot announce a rule, except in general terms, that should be applied in all cases where zoning ordinances or other legal restrictions existing at the time of the taking prohibit the use of the property for purposes other than these to which it is devoted. If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, *if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of the restrictions, he should admit testimony of present value based on prospective use of the property for purposes not then available.* [Emphasis added.]

The Court then fashioned the following instruction to be given the jury in such cases:

You are instructed that the term "market value" is the price which the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it, *taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.* [Emphasis in original.]

By this definition, the Court determined to leave the probability of the lifting of the proscription to the discretion of the jury. The jury in the instant case was given a similar instruction.

In *Cannizzo,* the condemnees had introduced evidence of the suitability of a portion of their property for shopping center development. The jury also heard evidence of the zoning restriction and the remoteness of the property from the center of town. The Court reasoned that it was for the jury to weigh the development trends and any facts that might bring about a rezoning of the property within a reasonable time.

It is now well-settled that a trial court has wide discretion in admitting and allowing the jury to consider evidence of the suitability or adaptability of the subject property for a use which is prohibited at the time of taking, and that discretion will not be disturbed unless an abuse of discretion is shown. *Jacobs v. State,* 384 S.W.2d 438, 440 (Tex.Civ.App.—Fort Worth 1964, no writ); *Henslee v. State,* 375 S.W.2d 474, 479 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); see *State v. Rankin,* 445 S.W.2d 581, 583 (Tex.Civ.App.—Corpus Christi 1969, no writ).

*Urban Renewal Agency v. Georgetown Savings & Loan Association,* 509 S.W.2d 419 (Tex.Civ.App.—Austin 1974, writ ref'd n.r.e.), cited by the State, was a condemnation case in which the appellate court held that it was error for the trial court to admit evidence of the proposed use of the property for an office building because the property was located in a creek bed and city building restrictions prohibited any development in creek beds. The landowners in that case produced no evidence to show a probable change in the construction restriction. In the instant case, however, the landowners did present evidence that the restrictions probably would be lifted in the near future.

*Broesche v. State,* 348 S.W.2d 770 (Tex. Civ.App.—Houston 1961, no writ), involved the condemnation of two lots which were restricted to residential use, but which

were being used for commercial purposes at the time of the taking. On appeal, the landowners complained of the trial court admitting any evidence of the residential restrictions and refusing to instruct the jury to consider only the commercial use being made of the property at the time of taking. The landowners presented evidence that the restrictions had been waived on the street where the property was located, and that they had the guarantee of the area civic club not to challenge any building erected on that street.

The court in *Broesche* noted that the landowners put on evidence of the commercial use of the property and that the highest and best use of the property was commercial. The landowners were also allowed to introduce evidence of the value of nearby commercial lots. As in the instant case, the entire issue of restrictions and waiver was before the jury. Also as in the instant case, the trial court submitted a definition of market value which permitted the jury to consider all the uses to which the property was reasonably adaptable and for which it is, or, in all reasonable probability, will become available within the reasonable future. In *Broesche*, the Court ruled that it was not error for the trial court to refuse to instruct the jury to consider the commercial use being made of the property because the instruction given authorized the jury to consider that use anyway.

Deed restrictions were also at issue in *State v. Reece*, 374 S.W.2d 686 (Tex.Civ. App.—Houston 1964, no writ). That case involved condemned property which fronted on a busy highway, but which was subject to residential deed restrictions. On appeal, the condemnor complained the trial court erred in striking all evidence of the deed restrictions from the record and in instructing the jury not to consider them in determining market value. The landowners introduced evidence of numerous violations of the deed restrictions. Many of the restricted lots in the subdivision were being used for commercial purposes at the time of the taking. The appellate court noted, however, that the validity of the restrictions had never been adjudicated and was still an open question. Thus, the restrictions would probably have a "direct bearing on the market value of the property." The court held that it was error for the trial court to strike the restrictions and to exclude consideration of their effect on the market value of the property.

The trial court in *Reece* obviously concluded that the evidence raised a sufficient probability that the restrictions would be lifted in the near future, and the appellate court noted that "it was probably not error to permit the witnesses to testify as to the values of the property ... for residential use and also for commercial use."

The condemnor in *Reece* also challenged the trial court's ruling allowing the landowner's appraisal witness to testify to sales of nearby commercial property. The court ruled that, in view of the evidence of the violations of the restrictions and the discretion vested in the trial court in determining the admissibility of evidence concerning other sales, it was not an abuse of discretion to admit such evidence.

*City of Fort Worth v. Beaupre*, 617 S.W.2d 828 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.), is also very instructive. The landowners in *Beaupre* owned unimproved property which was zoned commercial, but which was subject to similar deed restrictions limiting its use to residential. The evidence showed that there were many commercial establishments in the area and several were located on property which was subject to the same residential restrictions. There was evidence that the highest and best use of the property was both residential and commercial.

The trial court in *Beaupre* submitted a definition of market value similar to that submitted in *Reece, Cannizzo,* and the instant case. The condemnor had submitted a definition of market value which recognized the existence of the restrictions and instructed the jury that, if the restrictions apply, the subject property could not be considered adaptable for commercial use.

This is basically the theory advanced by appellants in the instant case.

The existence of the deed restrictions was not in issue. Their validity had been previously adjudicated and upheld despite the violations. The court in *Beaupre* ruled:

> The issue of removal or abandonment of the deed restrictions is not before us as it was in [the prior adjudication]. What is before us is the matter of just compensation of the condemnees.

> The instruction submitted by the trial court apprised the jury that consideration should not only be given to the presently existing deed restrictions but consideration should also be given to the reasonable probability, if any, that the subject property would become available for commercial use in the reasonable future. In view of the commercialization of [the area] and the important objective of fairly compensating the [landowners] for the loss of their investment, we hold that the trial court did not abuse its discretion by instructing the jury in the manner it did.

The State of Texas has no standing to sue to enforce private deed restrictions. The covenants themselves provide that only property owners in that subdivision may sue to enforce the restrictions, or, in certain circumstances, may vote to repeal them. The Kinsloes have been putting the property to this commercial use for almost seven years without any objection from their neighbors. In fact, the City granted them a variance in order to place a fence closer to the property line than zoning regulations allowed.

The record in this case reveals that the subject property is located near Interstate Highway 35. There is evidence of the general commercialization and rapidly increasing property values all along the "Austin-San Antonio Corridor" in which this property is situated. There was also evidence of at least six other violations of the residential deed restrictions in close proximity to the Kinsloes' property. One of the other properties in violation of the restrictions was a construction enterprise, which could hardly be characterized as an incidental use. The fact that the Kinsloes have operated this enterprise for seven years, apparently in conformity with zoning regulations and without any objection from neighbors, obviously goes to the weight of the evidence tending to show the property's adaptability for its present use and the probability of a change in the deed restrictions in the reasonable future. The Kinsloes' expert witness testified affirmatively that, in his opinion, there was a reasonable probability that the existing deed restrictions would be lifted in the reasonable future.

■ There is no doubt that these restrictive covenants would affect the market value of this property. However, the mere existence of the restrictions does not forestall the admissibility of evidence of possible changes in the restrictions and a valuation of the property based on that probability. Based on this record, we are unable to say that the trial court abused its discretion in admitting the valuation testimony by the Kinsloes' expert witness or its implied ruling that there was a reasonable probability that the restrictive covenants would be lifted within the reasonable future. In fact, the record amply supports the trial court's ruling. The State's first three points of error are overruled.

By its fourth point of error, the State complains that the trial court erred in admitting McNeil's testimony because his opinion was based on an improper theory of value. The State contends McNeil's opinion as to the value of the property is based on a value-in-use theory rather than the market value theory. The market value of a piece of property is the price a willing buyer would pay a willing seller. Value-in-use is the value of the property to the owner. Value-in-use is generally not considered to be the proper method of valuing property subject to condemnation. *See Texas Electric Service Co. v. Linebery*, 162 Tex. 570, 349 S.W.2d 105, 106 (1961); *State v. Schlick*, 142 Tex. 410, 179 S.W.2d 246, 249–50 (1944).

Mr. Kinsloe testified that the main advantage to him of owning the nursery lot was that it was adjacent to his residence which provided him a more convenient, secure, and economical operation. When asked on cross-examination if the lot had a value-in-use to Mr. Kinsloe, McNeil answered affirmatively. McNeil also answered affirmatively when asked if the value of the property was in its utility to the Kinsloes in their nursery business.

On direct examination, however, McNeil testified that there was a market "for a mom and pop operation" like the Kinsloes with a residence and a nursery lot adjoining it. McNeil stated that he used the "market value approach" in appraising this property. This comparative method of valuation uses recent sales of comparable properties in the same area to gauge the value of the subject property. McNeil took the subject property itself, the surrounding neighborhood, and six other comparable sales into consideration in forming his opinion as to the value of this property.

■ McNeil was exhaustively cross-examined, and the jury was properly instructed as to the correct definition of market value. All of these issues were before the jury. We find that the trial court did not abuse its discretion in admitting McNeil's testimony. The State's fourth point of error is overruled.

The State has only challenged the admission of evidence concerning the commercial value of this property and makes no claim that the jury's award was excessive in relation to the evidence of its commercial value.

Finding no reversible error, the judgment of the trial court is AFFIRMED.