**STATE of Texas, Appellant,**

v.

**RESOLUTION TRUST CORPORATION, Receiver for San Antonio Savings Association, Appellee.**

**No. 3–91–183–CV.**

Court of Appeals of Texas, Austin.

April 1, 1992.

Rehearing Overruled April 29, 1992.

Kirk Kuykendall, Asst. Atty. Gen., Austin, for appellant.

James M. Nias, Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

This is a condemnation case. The State of Texas, appellant, acting on behalf of the State Department of Highways and Public Transportation, filed suit seeking to condemn 0.425 acres of a 2.458–acre tract of land owned by the Resolution Trust Corporation (RTC), appellee. The panel of special commissioners appointed by the trial court awarded the RTC $766,000 as damages resulting from the condemnation. The State objected to this award and demanded a jury trial. The jury found $850,000 in damages, and the trial court rendered judgment on that verdict. On appeal, the State argues that the trial court erred in admitting into evidence an expert's opinions as to the value of the whole property before the taking and the value of the remainder after the taking, because the opinions were based on an unaccepted offer by a third party to buy the property. We will modify the judgment of the trial court and affirm it as modified.

## BACKGROUND

During the course of the jury trial, the trial court permitted the RTC's expert real-estate-appraisal witness, Jeff Bailey, to give an opinion regarding (a) the value of the whole property before the taking, and (b) the value of the remainder of the property after the taking. Bailey based his opinions on two different methods of appraisal: (1) the "income" approach, and (2) the "market" approach.

Using the market approach, Bailey estimated that the value of the whole property before the taking was $3,600,000. His market-approach value was based primarily on sales of comparable buildings in the area. However, Bailey also testified that he had given some weight to an unaccepted offer made by a third party to buy the subject property. Norwood Properties (Norwood), which according to Bailey was a well-known purchaser of office buildings in the Austin area, had offered to buy the whole property in question for $3,600,000; however, a deal for the sale of the whole property was never consummated. After the advent of the condemnation proceed-

ings, Norwood offered to buy the remainder of the property after the taking for $2,750,000. As of the time of trial, however, no binding contract had been made for the sale of the remainder to Norwood. Bailey testified that the $3,600,000 offer for the whole property before the taking was within the range of comparable sales that he used to form his opinion and that the unaccepted offer helped him to "hone in" on a particular value. Bailey also used the market approach to estimate the value of the remaining property after the taking: $2,750,000. This estimate was based solely on Norwood's unaccepted offer to buy the remaining property after the taking.

The State argues that the trial court erred by allowing Bailey to give his opinions as to the value of the whole property and the remainder because those opinions were substantially based on unaccepted offers by a third party to buy the property. The State asserts that unaccepted offers to buy are not admissible as evidence to show the value of the subject property, and that an expert's opinion based on such evidence is also inadmissible.

### DISCUSSION

The trial court did not allow Norwood's unaccepted offers themselves to be admitted into evidence. Rather, the court allowed the RTC's real-estate-appraisal expert, whose qualifications were not challenged, to give opinions as to the value of the whole property before the taking and the remainder after the taking based substantially on the unaccepted offers discussed above. In points of error one through three, the State asserts that this was error. We disagree.

Several cases support the proposition that unaccepted offers to purchase are not admissible to show fair market value. *See, e.g., Southwestern Bell Tel. v. Wilson,* 768 S.W.2d 755, 762 (Tex.App.1988, writ denied); *City of Fort Worth v. Beaupre,* 617 S.W.2d 828, 831 (Tex.Civ.App.1981, writ ref'd n.r.e.). One opinion goes on to state that "[t]he same reasons that preclude evidence of unaccepted offers render such offers valueless as a basis for opinion

evidence of value." *State v. Clevenger,* 384 S.W.2d 207, 209 (Tex.Civ.App.1964, writ ref'd n.r.e.). Assuming those cases to have been correctly decided, we do not consider them to be controlling here, for the reasons stated below.

Rule 703 of the Texas Rules of Civil Evidence provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or reviewed by the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the fact or data need not be admissible in evidence.*

Tex.R.Civ.Evid. 703 (emphasis added). It is clear that Rule 703, which became effective September 1, 1983, overturned the common-law rule, previously followed in Texas, that opinions based solely on inadmissible evidence are themselves inadmissible. *See Liptak v. Pensabene,* 736 S.W.2d 953, 957 (Tex.App.1987, no writ); *see also* 33 S. Goode, O. Wellborn, & M. Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 703.3 (Texas Practice 1988). Therefore, the fact that Norwood's unaccepted offers might not have been admissible to prove value does not affect the admissibility of Bailey's opinion testimony if such offers are a type of data that a real-estate-appraisal expert would reasonably rely on in forming an opinion of value. After reviewing the record, we find ample evidence to answer that inquiry in the affirmative. Therefore, we conclude that the trial court did not abuse its discretion in allowing Bailey's testimony even though his opinion was based largely on evidence that was arguably inadmissible.

Moreover, even if we were to assume that the trial court erred in allowing Bailey's testimony, such error would not require reversal. As discussed above, Bailey used both a market approach and an income approach in estimating the value of the whole property and the remainder. The entire discussion above concerning Bailey's testimony as to value based on inadmissible evidence involved only Bail-

ey's market-approach estimate. The record shows, however, that Bailey also used the income approach to estimate the value of the whole property before the taking. Bailey's income-approach value was based on the rental income of other comparable buildings in the area. Using this method, Bailey estimated the value of the whole property before the taking to be $3,598,673 (in contrast to the $3,600,000 value derived from the market approach).

Bailey also used the income approach to estimate the value of the remaining property after the taking. Bailey again based his income-approach value on the rental income of comparable buildings in the area. Using this method, Bailey estimated the value of the remainder after the taking to be $2,744,443 (in contrast to the $2,750,000 value derived from the market approach).

Using the amounts derived from the income approach yields a difference of $854,230 in value between the whole property before the taking and the remainder after the taking. The jury found that difference to be $850,000. Thus, even if we were to assume that the trial court erred in allowing Bailey to give his opinions based on a market approach, we could not conclude that that error amounted to such a denial of the rights of the State that it was rea-sonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1). We overrule the State's first three points of error.

█ In its fourth point of error, the State asserts that the trial court's judgment fails to vest in the State fee simple title to the property sought to be condemned. Finding no objection from the RTC on this point, we will sustain point of error four and modify the trial court's judgment to vest title to the condemned property in the State.

### CONCLUSION

Based on our foregoing discussion, we conclude that the trial court did not err in allowing Bailey's testimony into evidence. Further, even if the trial court committed error, it was not reversible error. We modify the trial court's judgment to vest title to the condemned property in the State, and we affirm the judgment as modified.