**CITIZENS NATIONAL BANK OF LUB-BOCK, Texas, Appellant,**

**v.**

**Homer G. MAXEY et al., Appellees.**

**No. 8096.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 7, 1970.

Rehearing Denied Dec. 28, 1970.

Shafer, Gilliland, Davis, Bunton & McCollum and W. O. Shafer, Odessa, Evans, Pharr, Trout & Jones and Charles B. Jones, Lubbock, for appellant.

James O. Cade, Brownwood, Cade, Bowlin & Griffin and Kenneth Bowlin, Lubbock, for appellees.

DENTON, Chief Judge.

This suit in the nature of fraud and conspiracy was brought by Homer G. Maxey, William Goodacre and wife, Glendell Goodacre, and Tommy Elliott and wife, Carla Jean Elliott against the Citizens National Bank of Lubbock, Texas and two of its related corporations, and some 25 other defendants alleged to be either officers or directors and two customers of the bank. Fifteen individual defendants were granted summary judgment from which no appeal has been taken. At the close of plaintiff's testimony all remaining defendants save and except the Citizens National Bank were granted instructed verdicts. Judgment was entered on the jury verdict that plaintiffs recover from the defendant bank $913,378.53 actual damages and $1,000,-500.00 exemplary damages.

In a rather lengthy and detailed petition plaintiffs below alleged the defendants defrauded and conspired to defraud plaintiffs of property having a value of several million dollars. In substance, it was alleged that prior to October, 1962, Mr. Maxey was induced to bring his banking business to the defendant bank and gave him an open line of credit up to $1,000,000.00. Thereafter, Mr. Maxey did negotiate numerous loans from appellant bank and was persuaded to give the bank mortgages, securities and pledges of his extensive properties; that subsequently he was ordered to pay off all his obligations by a day certain or the properties owned by him and the respective corporations he controlled would be foreclosed; and that this was in conformity with the bank's preconceived plan to fraud-

ulently convert appellees' extensive properties. It was further alleged appellees arranged to sell some of their property for in excess of $4,000,000.00 and secured an interim loan commitment sufficient to discharge their debt to the bank. It was alleged this arrangement was not finalized when one of the bank's attorneys, who also represented Maxey, informed the prospective lender that the interim loan was unnecessary, and that the bank would make the loan to Maxey; that after the temporary financing was killed by the action of the bank's attorney, the bank foreclosed its mortgages and pledges against appellees' property who bought these properties in for less than their value. The plaintiffs sought judgment for an accounting, damages for conversion of their properties, damages to credit and business goodwill and for exemplary damages, all in the sum of some twenty million dollars.

The defendant bank denied any wrongdoing, and by cross action sought recovery for some $220,000.00 balance it alleged was due on the debt owed by appellees to the bank after the application of all proceeds from the sales of the appellees' foreclosed properties.

The jury found in response to special issues submitted: (1) The defendant bank held the sale on February 16, 1966 without having exhibited the property to be sold to prospective purchasers other than itself or companies controlled by it (2) The sale was held without notice to other prospective purchasers (3) The sale was made without taking any bids on the property (4) The defendant bank and companies controlled by it were the only parties represented at the sale (5) The defendant bank or companies controlled by it purchased the properties at the sale (6a) The sale by the bank of the Plaza Building Corporation stock to Monterrey Lubbock Corporation for $749.-00 was a grossly inadequate consideration (6b) The fair market value of the Plaza Building stock sold was $1,051,516.02 (7) The sale by the bank of the Maxey Lumber Company stock to the bank for $231,-000.00 was a grossly inadequate consideration (7b) A fair market value of the Maxey Lumber Company stock sold was $370,-000.00 (8a) The plaintiffs were entitled to exemplary damages; (8b) In the amount of $1,500,000.00 (9) The cash market value of the assets of Plaza Building Corporation on February 16, 1966 was $3,619,617.-06 (10) The amount of liabilities of Plaza Building Corporation on the same date was $2,568,101.04.

The trial court's judgment found, as a matter of law, that the undisputed evidence shows as of February 16, 1966, the date of the foreclosure, Homer G. Maxey was personally indebted to the defendant bank in the total amount of $500,947.98 including interest; that Plaza Building Corporation was indebted to the bank the sum of $486,594.87; that Triple M Feeders, Inc. was indebted to the bank in the total sum of $394,938.03. The court allowed the bank a credit of $895,886.01, the total indebtedness of Maxey and Triple M Feeders upon the judgment against the bank, and held the debt of Plaza Building was credited to the bank in the jury finding in Special Issue No. 10. The court further found the market value of certain farm and ranch equipment and supplies, horses and cattle and other corporate stock sold by the bank after its foreclosure was $387,748.52. Certain life insurance policies on the life of Homer G. Maxey and listed farm and ranch equipment in the bank's possession were ordered to be delivered to the plaintiffs below.

The trial court's judgment concluded that plaintiffs were entitled to recover the market value of Plaza Building Corporation stock of $1,051,516.02 and $370,000.00 market value of the Maxey Lumber Company stock sold plus $387,748.52 the market value of the farm and ranch equipment and supplies, horses and cattle and other corporate stock referred to above. This latter figure was not submitted to the jury, but found by the court from undisputed evidence. The value of the Plaza Building Corporation and Maxey Lumber stock

were values determined by the jury. After giving the bank credit for the indebtedness owed by Maxey and the corporations controlled by him, the trial court entered judgment in favor of plaintiffs below for $913,378.53 actual damages and $1,500,000.00 exemplary damages and directed the delivery to plaintiffs of certain life insurance policies, farm and ranch equipment, a trailer house and lot in Farmington, N. M.

■ Appellant first challenges the sufficiency of the evidence to support the jury finding in Special Issue No. 6b that the fair market value of the Plaza Building Corporation stock was $1,051,516.02 on February 16, 1966. All parties seem to agree there is no evidence to support this jury finding, but the parties do present divergent views concerning the effect of such finding. There was clearly no evidence presented as to the stock's market value at any material date. It is apparent from this lengthy record the parties tried the case on the theory of the market value of the properties held by Plaza less the liabilities owed by the corporation. This is further evidenced by the submission of Special Issues 9 and 10. Special Issue No. 9 inquired of the cash market value of the "assets" of Plaza as of the date of foreclosure. Special Issue No. 10 sought the amount of liabilities of the corporation as of the same date. It is to be noted the value of Plaza stock as determined in Special Issue 6b was the difference in the market value of the corporation's assets and liabilities found by the jury in Special Issues 9 and 10. We therefore conclude the submission and finding of Special Issue 6b is not material to the judgment. The trial court did not treat the value of the Maxey Lumber Company stock in the same manner, that is, the jury was not asked to determine the value of its assets and liabilities. Appellant's first four points of error present no reversible error.

■ Appellant next asserts there is no evidence and insufficient evidence to support the jury findings of the assets and liabilities of the Plaza Corporation. This corporation was a closely held family corporation. It is uncontradicted there was no evidence of the market value of Plaza stock. No sales of its stock was shown to have been made prior to foreclosure. Book value is entitled to little, if any, weight in determining the value of corporate stock, and many other factors must be taken into consideration to determine their value. Bendalin v. Delgado, 406 S.W.2d 897 (Tex.Sup.). The value of corporate stock is predicated on the market value of the assets of the company after deducting its liabilities. Wineinger v. Kay (Tex. Civ.App.) 58 S.W.2d 876; Linker v. Batavian National Bank of La Crosse, 244 Wis. 459, 12 N.W.2d 721, 14 N.W.2d 496. Whether or not the evidence supports the findings Plaza stock had a fair market value of $1,051,516.02 must in turn be determined by whether or not the evidence supports the findings of the value of the corporation's assets and liabilities. The cash market value of Plaza's assets are not seriously questioned, although, there is some difference of opinion expressed as to the value of certain Plaza held properties. The amount of the liabilities of this corporation are the main cause of contention. To put it another way, the amount of the corporation's liabilities are not as strongly contested as the effect of such liabilities have upon the market value of Plaza's corporate stock.

A large percentage of Plaza's liabilities are evidenced by notes, mortgages and pledges executed by the corporation as liens upon various ranches, farms and a hotel owned by Plaza. There is positive evidence Plaza had an indebtedness as evidenced by record mortgages and liens at the time of foreclosure of $3,663,141.08. There were past due ad valorem taxes and franchise taxes owed by Plaza in both Oklahoma and Texas in the amount of $48,192.81. In addition, Plaza owed the sum of $78,696.81 for past due insurance premiums, accounts receivable, hotel equip-

ment and unsecured notes. Except in a few instances, which we do not deem necessary to list in detail, there is no real disagreement to these figures.

However, appellees take the position the value of Plaza stock is determined by the difference in the market value of its assets less only the amount of indebtedness owed to the bank by Plaza. The argument is the bank can be concerned only with the amount of the indebtedness owed to the bank, and that the other indebtedness owed to other record creditors cannot be considered in determining the value of Plaza stock. We do not agree. This method of calculation urged by appellees would not determine the true value of Plaza stock. The trial court, without objection from plaintiff below, submitted the case to the jury in this manner. The evidence is insufficient to support the jury finding the liabilities of the Plaza Corporation were $2,568,101.04. Ample evidence supports the conclusion the liabilities of the corporation exceeded its assets by $180,413.64, which leads to the further conclusion Plaza Corporation was insolvent at the time of foreclosure. We therefore sustain appellants' points of error seven and eight.

By appellants next eight points of error they contend there is no evidence and insufficient evidence to support the jury findings that the stock of Plaza and Maxey Lumber Company was sold at foreclosure for a grossly inadequate price. The trial court defined the term "grossly inadequate" as "a lack of fair and intelligent consideration, shocks the sense of justice, and is entirely unreasonable."

It is well settled that the sale of property at a foreclosure sale will not be voided merely because of inadequate price. Sparkman v. McWhirter (Tex.Civ.App.) 263 S.W.2d 832 (writ.ref.); Thornton v. Goodman (Tex.Com.App.) 216 S.W. 147 (opinion adopted). There must be evidence of irregularity which caused or contributed to cause the property to be sold for a grossly inadequate price. White v. Lakewood Bank and Trust Company (Tex.Civ.App.) 438 S.W.2d 129. The jury found that the sale of the stock in Plaza for $749.00 and the sale of approximately forty eight percent of the stock of Maxey Lumber owned by Maxey for $231,000.00 at foreclosure was a grossly inadequate consideration as defined by the trial court.

As stated above the liabilities of Plaza exceeded the unchallenged value of its assets on the date of the foreclosure. The evidence also reflects that prior to the foreclosure, Plaza had assumed the twenty-year lease on the Plainsman Hotel, which by its terms required the payment of monthly rentals of $6,000.00 plus taxes and upkeep. It is uncontradicted the hotel operated at a loss of approximately $85,000.00 in the 2½ years prior to foreclosure. There is evidence the defendant bank advanced three monthly rental payments totalling $18,000.00 in 1965. Plaza's several ranches were heavily indebted as evidenced by both first and second lien mortgages. The company's earnings and indebtedness are factors to determine the stock's value and its sale price at foreclosure.

At the time of the foreclosure, Mr. Maxey was the owner of 75 percent of the Maxey Lumber Company stock. Harold Blank was the owner of the remaining 25 percent. Maxey had pledged 23,125 shares of the Lumber Company stock to the bank, which constitute a first lien. Mr. Blank had a first lien on Maxey's remaining 14,375 shares and the bank held a second lien on these shares. The bank paid $231,000.00 for the 23,125 shares or approximately forty eight percent of the total issued Maxey Lumber stock. The jury found these shares had a fair market value of $370,000.00. In a transaction not entirely clear from the record, the bank later obtained some additional Maxey Lumber stock upon which Mr. Blank held the lien and credited some $45,000.00 on the plaintiff's notes. Some two years subsequent to the foreclosure, the bank sold the Maxey Lumber stock to one of plaintiff's attorneys for the sum of $300,000.00.

The $231,000.00 paid by the bank for 48 percent of Maxey Lumber stock was over 60 percent of the fair market value found by the jury. Undoubtedly, the Maxey Lumber Company was profitable business. It was operated and under the control of Mr. Blank; and it is uncontradicted it paid dividends to the stock holders regularly; and substantial salaries were paid to the managing owners. However, in considering all the evidence we cannot say under this record the sales of stock of both Maxey Lumber and Plaza Building were grossly inadequate. Richardson v. Kent (Tex. Civ.App.) 47 S.W.2d 420; Graham & Locke Investments v. Madison (Tex.Civ. App.) 295 S.W.2d 234 (ref. n. r. e.); Miller v. Gibralter Savings & Bldg. Ass'n (Tex.Civ.App.) 132 S.W.2d 606 (dism. judgment correct). We conclude the evidence is insufficient to support the jury findings the two stock sales under foreclosure were grossly inadequate.

The jury found the plaintiffs were entitled to exemplary damages based on the ground the sale by the bank, through its officers, of the Plaza Building and Maxey Lumber stock was "actuated by some evil intent or with such gross negligence and disregard of the right of plaintiffs as is deemed equivalent to such evil intent." Thus, the question of exemplary damages was conditioned on the fairness and impartiality of the sale of the corporate stock foreclosed upon. No issues were submitted regarding any other tortious acts committed by the officers or agents of the bank. Having found the evidence is insufficient to support the findings that the sales were grossly inadequate, exemplary damages will not stand.

Appellant brings forward other points of error complaining of alleged jury misconduct, the refusal of the trial court to admit certain exhibits into evidence and excessive damages. In view of another trial we deem it unnecessary to discuss and determine these points of error.

■ By cross point, plaintiffs below contend the trial court erred in not rendering judgment in accordance with the evidence and the jury findings in Special Issue No. 9 which found the value of Plaza's assets was $3,616,617.06. It is their contention plaintiff should recover on the basis of the value of Plaza's numerous properties and deducting only the amount of $220,303.37, the amount the bank sought against Plaza in its cross action. In other words, appellees would disregard all other liabilities admittedly owed by Plaza. We have concluded appellees' cross point cannot be considered in this cause because they made no complaint in the trial court as to the judgment entered. The trial court in a case such as this must be apprised of any complaint or objection the successful party has to the judgment. West Texas Utilities Co. v. Irvin, 161 Tex. 5, 336 S.W.2d 609; Cunningham v. R. W. McPherson & Associates (Tex.Civ.App.) 392 S.W.2d 145 (ref. n. r. e.).

The judgment of the trial court is accordingly reversed and the cause is remanded for a new trial.