Don ROBERTS, et ux., Billie
Roberts, Appellants,

v.

E.E. HARVEY, Appellee.

No. 08–82–00033–CV.

Court of Appeals of Texas,
El Paso.

Nov. 23, 1983.

Richard Bonner, James M. O'Leary, Shafer, Gilliland, Davis, McCollum & Ashley, Odessa, for appellants.

Gerald K. Fugit, Odessa, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

WARD, Justice.

This case arises out of the employment of the Plaintiff E.E. Harvey by Permian Production Service, Inc., a corporation owned by the Defendants Don Roberts and wife, Billie Roberts. The Plaintiff claimed that the Defendants and the corporation had engaged in a conspiracy to deprive him of ownership of twenty-five percent of the stock in the company to which he was entitled under an employment contract with Mr. Roberts. The case was submitted to a jury on the theory of civil conspiracy. Upon findings that favored the Plaintiff, the trial court entered judgment against the two individual Defendants in the amount of $95,000.00. We reverse and remand for a new trial.

Mr. and Mrs. Roberts owned all the stock of Permian Production Service, Inc., having purchased the stock in 1972 for $62,000.00. An amount of $11,000.00 remained owing to one Ocker, the seller of the stock, and that indebtedness was secured by a pledge of the stock. In early 1974, Mr. Roberts employed the Plaintiff Harvey to run the corporation, agreeing to pay him $1,500.00 a month plus twenty-five percent of the company's stock which was to be transferred to the Plaintiff when the debt owed thereon was paid. The agreement made between the parties did not contain any provisions requiring the Ocker note to be paid by a certain date. It did provide that in the event that Harvey left the employment of the corporation for any reason prior to the date on which the stock was transferred to him, he would not be entitled to any portion of or have any claim against the stock of Don Roberts. The agreement also provided that it in no way affected the corporation's ability or right to discharge Harvey. The company was in the oil servicing business, and the parties agree that when Harvey was employed the company was in bad financial shape. Harvey's impression from what he was told by Roberts was that it was due to lack of business and that some debts did exist, consisting of the balance owed on the stock and a few monthly past due repair bills owing to Sky-Top Rig Company. Although the Plaintiff Harvey was given the title of president and general manager of the corporation, he was never given any control of the financial affairs of the business and knew practically nothing of the real liabilities of the corporation. His functions were limited to the job of securing well servicing contracts and bossing the crews. He made repeated requests to see the company's books and his requests were repeatedly refused on various grounds. Don Roberts spent no time with the company, while Mrs. Roberts, who was secretary-treasurer of the corporation, was the full-time bookkeeper and was in complete control of the finances, for which she received a salary of $1,500.00 a month. The company did make $833,950.45 in 1974, but according to the Defendants was broke at the end of that year to the extent that it had to be liquidated by May, 1975. The Plaintiff testified that in the last two months Permian Production Service, Inc., was in business, he spoke to Roberts about buying the company. He was informed Roberts would sell the rigs owned by Permian Production Service, Inc., to the Plaintiff for $375,000.00, but the Plaintiff declined as he felt the price was too high. It was established that when Permian Production was liquidated, the Defendant Roberts sold the three rigs owned by the company for a total of $388,-000.00. Plaintiff had resigned from the company about two months prior to the final liquidation, as he was convinced by Mrs. Roberts that the company was insolvent. The Ocker note was paid on May 6, 1975. Plaintiff was not in the employ of

the company at that time and never received the twenty-five percent of the stock.

Suit was later filed by the Plaintiff on the grounds that he had suffered damages from the activities of the Defendants. Theories of conversion, conspiracy and fraud were alleged. Plaintiff sought judgment for an accounting and for actual and punitive damages.

The jury found in response to Special Issues submitted:

(1) That two or more Defendants entered into a conspiracy to deprive the Plaintiff of twenty-five percent of the stock to which he was rightfully entitled.

(2) That Don and Billie Roberts had entered into the conspiracy.

(3) The purpose of the conspiracy was to defraud the Plaintiff of the value of the stock.

(4) That the purpose was carried out.

(5) That the carrying into effect of such purpose and or conspiracy resulted in damage to the Plaintiff.

(6) That the two Roberts took from or converted funds from Permian Production Service, Inc., for their own personal use and benefit to the detriment of the Plaintiff.

(7) That both Defendants converted funds from Permian Production Service, Inc., for their own personal use.

(8) That on or about August 28, 1974, Don Roberts did not intend to perform the contract dated February 1, 1974.
a. That the Ocker note could have been paid during the time that the Plaintiff was employed by the corporation.
b. That the reasonable cash market value of twenty-five percent of the stock in the corporation at the time it could have been paid off or within sixty days thereafter was the sum of $95,000.00

(9) That $95,000.00 would fairly and reasonably compensate the Plaintiff for his damages.

(10) That the Plaintiff was not entitled to recover exemplary damages.

(11) That the Plaintiff in going to work for the corporation relied upon the representation of Don Roberts prior to accepting the contract for employment.

(12) That Roberts did not act in good faith in failing to pay the Ocker note prior to the time it was paid.

As previously stated, the court accepted the verdict and entered judgment that the Plaintiff have and recover from the Roberts the sum of $95,000.00.

The Defendants' second point brings forth the complaint regarding the court's charge, in that submitting the issues and instructions on civil conspiracy nowhere was a submission made of the required finding by the jury of an intent by Mr. and Mrs. Roberts to participate in a conspiracy. Intent of each conspirator to participate in the purpose of the conspiracy is a necessary element. The official purpose of the conspiracy was to defraud the Plaintiff of twenty-five percent of the then outstanding capital stock of Permian Production Service, Inc. Necessity of a finding of intent was set forth in *Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation*, 435 S.W.2d 854 (Tex.1968). See also: *Hill v. Robinson*, 592 S.W.2d 376 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Maxey v. Rodman*, 444 S.W.2d 353 (Tex.Civ. App.—El Paso, 1969, writ ref'd n.r.e.). We sustain the Defendants' second point of error.

The Defendant's fifth point of error brings forth the complaint regarding the submission of Special Issue No. 8(b) and Special Issue No. 9 inquiring of the reasonable cash market value of twenty-five percent of the stock of Permian Production Service, Inc., as the proper inquiry should have been as to the market value of its assets less the amount of its liabilities. The outstanding stock of the corporation was closely held since it was owned entirely by Don Roberts and his wife. They had purchased the stock for $62,000.00 in August, 1972, some sixteen months prior to the time the Plaintiff started to work for the corporation. There was no evidence of any sales of the stock after its initial purchase by the

two Defendants. The mere offer by Mr. Roberts to sell to the Plaintiff the drilling rigs during the time that the Plaintiff was working for the corporation was not competent to show the market value of such property, much less the market value of the stock.

There can be no cash market value of corporate stock where it has not been sold in sufficient quantities to establish a prevailing sales price. Where there is no evidence of market value, it is error to submit to the jury an issue on market value. *Continental Oil and Cotton Co. v. Wristen & Johnson,* 168 S.W. 395 (Tex.Civ.App.—Fort Worth 1914, no writ). In the absence of testimony or evidence of a reasonable cash market value of corporate stock, the method employed in determining the worth or value of such stock is to determine the difference between the value of the assets and the amount of liabilities of the corporation. *Citizens National Bank of Lubbock v. Maxey,* 461 S.W.2d 138 (Tex.Civ.App.— Amarillo 1970, writ ref'd n.r.e.). As to market value of stock, the Plaintiff now recognizes that an improper inquiry was made of the jury, as the Plaintiff states in his brief the following: "[t]here is nothing in the record that would indicate the market value of the stock." The fifth point of error is sustained.

■ The sixth point of error is to the effect that the trial court erred in entering judgment for the Plaintiff on the basis of the jury's answers to Special Issues 6 and 7 inquiring as to a conversion of Permian Production Service, Inc. because the Plaintiff had no right and title to whatever was converted and because there were no damage issues relating to the conversion. It is our view that the issues in question were not inquiring into the existence of a cause of action for conversion, but rather were evidentiary inquiries relating to the conspiracy cause of action. The issues were not necessary, but we fail to see where the Defendants have been harmed by this error. Rule 434, Tex.R.Civ.P. The Defendants' sixth point of error is overruled.

■ The first point of error presents a legal and factual insufficiency complaint regarding the jury's findings to Special Issue Nos. 1, 2, 3, 4 and 5, which related to the submission of the conspiracy theory. In addition to what has been previously pointed out, the Plaintiff testified that Roberts told him that as soon as the business was operating on a paying basis that the twenty-five percent of the capital stock would be transferred to the Plaintiff, and that aside from the $11,000.00 note due to Ocker and the four payments behind to Sky-Top, no other debts were mentioned by Roberts. It was only after the Plaintiff began to work that he found out from Billie Roberts that Permian Production had no money. The first few months after his employment, he found out about a large note owed in Midland, and he agreed at that time to allow Roberts to sell two older rigs to pay the Midland notes since the rigs were not suited to the needs of Permian Production. He testified that he did not know the amount of that debt or the selling price of those two rigs and that he was never able to obtain this information from either of the Defendants. To say the least, the evidence reflects that the Defendants were extremely secretive about the financial condition of the corporation and were determined that the Plaintiff would never obtain the requested information. Mrs. Roberts admitted that she was able to pay the Ocker note in the fall of 1974, and her excuse for not paying the note at that time was that the note holder did not want the money. This information was never released to the Plaintiff. The Plaintiff was able to establish that during the time he was associated with the corporation that large sums were paid to the two Defendants, which according to the Defendants were repayments on large loans that the corporation owed to them. However, the records of these transactions were in the possession of the Defendants and were never disclosed to the Plaintiff. Other novel transactions were shown including the expenses of vacations out of corporate funds for both Defendants and the expenditure of over $10,000.00 for the purchase of a Cadillac for the use of Mrs. Roberts. There

was evidence that in the year 1974, Permian Production, under the Plaintiff's management, made $833,950.45. On the other hand, the liabilities of the corporation were under the control of the Defendants and other than general statements to the effect that the debts were large, no specifics were ever forthcoming from the Defendants. When the corporation was finally liquidated by the Defendants, the three rigs owned by the company were sold for a total of $388,-000.00, but again no specifics as to the disposition of these funds were ever furnished to the Plaintiff. The testimony of the Defendants at the trial regarding the debts and the various expenditures of the corporation could be characterized as extremely nebulous, the Defendants had either forgotten what happened to the funds, or the records were misplaced or had been destroyed in a flood. Thus, the jury was entitled to have considered that at the time of the disposition of the corporation there were at least $388,000.00 in assets on hand, since the rigs were sold for that much. On the other hand, the jury was more than entitled to have disbelieved the Defendants as to the debts of the corporation. In reviewing the legal sufficiency points which have been presented, we have considered only the evidence and the inferences therefrom which support the jury's findings, and we overrule those legal insufficiency points. In reviewing the factual sufficiency points, we have considered all of the evidence and those points are likewise overruled. The Defendants' first point of error is overruled.

The Defendants' fourth point of error complains that the evidence was legally and factually insufficient to support the jury's findings to Special Issue No. 9 which included a finding relating to the loss of reasonable cash market value of twenty-five percent of the stock. As we have previously discussed, an incorrect submission of Special Issue No. 9 was made as the cash market value the stock was not involved. For that reason, the point is overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial.