**MERCANTILE BANK & TRUST, Appellant,**

v.

**Eileen CUNOV, Appellee.**

No. 04–87–00238–CV.

Court of Appeals of Texas, San Antonio.

March 30, 1988.

Rehearing Denied April 27, 1988.

Howard Newton, Judith R. Blakeway, Matthews & Branscomb, San Antonio, Joe R. Greenhill, John R. Briehan, Baker & Botts, Austin, for appellant.

Louis LeLaurin, III, Marita Emmett, LeLaurin & Adams, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal of an action based upon the wrongful purchase of corporate stock at a private foreclosure sale by defendant Mercantile Bank & Trust. The stock was owned by plaintiff Eileen Cunov and held as collateral under a security agreement. The stock was neither customarily sold in a recognized market nor the subject of widely distributed standard price quotations. The jury verdict and trial court judgment awarded the plaintiff $879,934.00 based on the fair market value of the stock less the amount of indebtedness it secured. The judgment allowed the recovery of prejudgment interest at 6% per annum compounded daily and postjudgment interest at 10% per annum compounded daily.

The judgment was based upon answers to the following questions:

## QUESTION NO. 1

Do you find from a preponderance of the evidence that Mercantile Bank & Trust conducted a private sale of Eileen Cunov's 1,643 shares of common stock in A.J. Ploch Oil Company, Inc. on September 22, 1983?

You are instructed that after Eileen Cunov defaulted on her guaranty to Mercantile Bank & Trust, and the bank foreclosed on her stock in A.J. Ploch Oil Company, Inc., the bank was legally required to do one of the following:

a) Propose in writing to retain Eileen Cunov's shares of stock in satisfaction of the debt; or

b) conduct a public sale of the stock; or

c) conduct a private sale of the stock.

Answer: "We do" or "We do not".

Answer: *"We do".*

## QUESTION NO. 2

Do you find from a preponderance of the evidence that Mercantile Bank & Trust purchased Eileen Cunov's 1,643 shares of common capital stock at the private sale on September 22, 1983?

Answer: "We do" or "We do not".

Answer: *"We do".*

## QUESTION NO. 3

In connection with the following question, you are instructed that Mercantile Bank & Trust was prohibited by law from purchasing Eileen Cunov's shares of common capital stock in A.J. Ploch Oil Company, Inc. at a private sale, and if you have so found in response to questions 1 and 2, then Mercantile Bank & Trust is liable to Eileen Cunov for the fair market value of her stock in A.J. Ploch Oil Company, Inc. on September 22, 1983, less the amount of money the bank was entitled to recover from her on September 22, 1983.

What do you find from a preponderance of the evidence to have been the fair market value of Eileen Cunov's 1,643 shares of common capital stock in A.J. Ploch Oil Company, Inc. on September 22, 1983?

In answering this question you are instructed not to take into consideration the amount of the debt owed to Mercantile Bank & Trust.

Answer in dollars and cents.

Answer: $1,723,507.00

In its first three points of error, Mercantile maintains that the trial court erred in

failing to submit controlling special issues and instructions. Mercantile argues that the proper questions in this case should be: (1) whether the disposition of the collateral was commercially reasonable; (2) whether the bank's acquisition of shares was a proximate cause of damages to Eileen Cunov, and (3) the amount of damages.

In reaching its verdict, the jury found that Mercantile conducted a private sale of Eileen Cunov's stock wherein they purchased her 1,643 shares. The jury found that at the time of the private sale, the stock had a fair market value of $1,723,-507.00. The trial court subtracted the amount of the debt ($843,573.00) from the fair market value finding and rendered judgment for $879,934.00, plus prejudgment and postjudgment interest.

■ The last sentence of TEX.BUS. & COM. CODE ANN. § 9.504(c) (Tex. UCC) (Vernon Supp.1988) provides, "The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale." As a corollary, the secured party may not purchase at a private sale collateral which is not sold in a recognized market or is not of a type which is the subject of widely distributed price quotations. This is true regardless of whether or not *the sale* could be determined as commercially reasonable. It is the *purchase,* by the secured party in this type of situation which is proscribed by statute. Both appellant and appellee have searched in vain for a Texas case squarely addressing this point, and our research reveals none. The conclusion we reach, however, is inescapable given the plain meaning of the statute. Further, impairment of this duty may not be waived by contract. TEX.BUS. & COM. CODE ANN. § 9.501(c) (Tex. UCC) (Vernon Supp.1988).

■ Pertaining to the trial court's failure to submit special issues on proximate cause and damages, Mercantile did not request such issues at trial and therefore has not preserved error on appeal. TEX.R.

CIV.PROC. 278. Points of error one through three are overruled.

Under point of error four, Mercantile complains that the trial court erred by not submitting its requested issue on estoppel. Mercantile maintains that Cunov is estopped to assert that the sale of her stock was not commercially reasonable.

■ As discussed previously, TEX. BUS. & COM. CODE § 9.501 prevents the pre-default waiver of the secured parties' duties or the debtor's rights conferred by § 9.504(c). The provisions in the pledge agreement signed by Cunov which purportedly authorizes Mercantile to violate § 9.504(c) are not valid and cannot be considered as evidence of estoppel, an equitable defense. Outside of these provisions, Mercantile points only to Cunov's failure to object to the sale as evidence of estoppel. In our opinion, Cunov was under no duty to object, especially in light of the statutory prohibition against Mercantile's conduct. In order to prove estoppel, Mercantile would have needed to show a "false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice." *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 930 (1952). We conclude that Mercantile provided no evidence of estoppel and, therefore, the trial court's failure to submit such issues was not error under TEX.R.CIV.PROC. 279. *Cameron County v. Velasquez,* 668 S.W.2d 776 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Point of error four is overruled.

■ Under point of error five, Mercantile complains that the trial court erred in submitting special issue number one because it was an evidentiary and not a controlling issue. No such objection was made in the trial court, therefore, under TEX.R. CIV.PROC. 274, the complaint on that ground is waived. *Davis v. Campbell,* 572

**549**

S.W.2d 660, 663 (Tex.1978). Point of error five is overruled.

■ Under point of error six, Mercantile argues that special issue number two was submitted in error. The objections made at trial concerning this issue were that the issue was not conditioned on an affirmative response to issue number one and that the question was repetitive. Only these objections are presented to us for review. *Davis,* supra. In this regard, Mercantile conceded at trial and on appeal that the bank itself had characterized the transaction as a private sale. Where a special issue involves more than one question, and the evidence is undisputed except as to one issue, it is not error to submit the special issue. *Shaw Tank Cleaning Co. v. Texas Pipeline Co.,* 442 S.W.2d 851 (Tex. Civ.App.—Amarillo 1969, writ ref'd n.r.e.); *Page v. Hancock,* 200 S.W.2d 421 (Tex.Civ. App.—Austin 1947, writ ref'd n.r.e.). Point of error six is overruled.

■ In its seventh point of error, Mercantile argues that the trial court erred in submitting special issue number three because the instruction contained therein was not necessary to allow the jury to answer the question, was a comment on the evidence, and advised the jury of the effect of his answers. At trial, however, Mercantile's only objection was that the instruction was, in effect, a ruling by the trial court that the sale was commercially unreasonable as a matter of law and therefore placed the burden on the defendant to prove that the sale was commercially reasonable. Only this argument is preserved for appeal. *Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978). As stated previously, a finding of commercial unreasonableness is not necessary to show a violation of the implied prohibition contained in the last sentence of § 9.504(c). Point of error seven is overruled.

Mercantile's eighth point of error which argues that special issue number three is immaterial, evidentiary, and not a controlling issue is not preserved for appeal for the same reason that point of error seven is

not preserved. Point of error eight is overruled.

■ In its ninth and tenth points of error, Mercantile asserts that there is neither legally nor factually sufficient evidence to support the jury's finding that the fair market value of Cunov's stock was $1,723,507.00. In passing upon these challenges, we will be guided by the usual authorities governing review of such points, namely, *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Calvert, "No evidence" and "insufficient evidence points of error,"* 38 TEX.L.REV. 361 (1960); and *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

At trial, conflicting evidence concerning the value of the stock was presented. Mercantile attempted to show through witnesses Tumulty (President of the corporation) and Kiolbassa (Executive Vice President of Mercantile) that the corporate stock in dispute was subject to transfer restrictions such as a right of first refusal. There was also testimony to the effect that A.J. Ploch, Eileen Cunov's father, had virtual control of the disposition of his company's stock through his capacity as a patriarch.[1] In sum, Mercantile put on evidence which tended to show that the stock was of no value to anyone outside of the corporation and that it was impossible to evaluate the stock.

■ Cunov elicited testimony concerning the value of the stock from Mr. Brehm, a certified public accountant, and, through deposition testimony, Mr. Davis, a real estate appraiser hired by Mercantile. Their testimony revealed the steps each took in determining the value of the corporation's assets and liabilities. In a corporation where there is no established market value for its stock, the proper method of determining the value of stock is to take the difference between the value of the corporate assets and the amount of the liabilities. *Roberts v. Harvey,* 663 S.W.2d 525 (Tex.App.—El Paso 1983, no writ); *Citizens National Bank of Lubbock v. Maxey,* 461 S.W.2d 138 (Tex.Civ.App.—Amarillo

---

1. Mr. Ploch had divided the stock in A.J. Ploch Oil Company equally among his four daughters.

1970, writ ref'd n.r.e.). This evidence being supplied by the aforementioned witnesses, the evidence is at once both legally and factually sufficient to support the jury's answer to special issue number three. Points of error nine and ten are overruled.

▪▪▪ Under point of error eleven, Mercantile asserts that the trial court erred in awarding Cunov prejudgment interest at 6% compounded daily rather than at 6% simple interest. In *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985), the Texas Supreme Court stated:

> ... a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages that have accrued by the time of judgment ... at

the prevailing rate that exists on the date judgment is rendered according to the provisions of TEX.REV.CIV.STAT.ANN. art 5069–1.05, § 2 (Vernon Supp.1985).

Cunov requested prejudgment interest by way of a trial amendment. Mercantile complains that since Cunov did not specifically request the compounding of prejudgment interest, it should not have been allowed. We do not agree. A simple request for prejudgment interest contained in the pleadings is sufficient for recovery of the same under *Cavnar.* *McCann v. Brown,* 725 S.W.2d 822 (Tex.App.—Fort Worth 1987, no writ) (upholding pre judgment interest rate of 10% compounded daily). Point of error eleven is overruled.

▪▪▪ Under point of error twelve, Mercantile complains that the trial court erred in awarding judgment interest at the rate of 10% compounded daily instead of simple interest. We agree. TEX.REV.CIV.STAT. ANN. art. 5069–1.05 has never provided for the daily compounding of interest on judgments, and authority for such a position is apparently non-existent under Texas law.[2] Cunov asserts that *Cavnar* supports the awarding of postjudgment interest compounded daily. *Cavnar* addresses the issue of prejudgment interest, not postjudgment interest. The award of 10% judgment interest compounded daily should be changed to reflect the award of 10% simple interest on the judgment. Point of error twelve is sustained. The judgment of the trial court is affirmed as modified.

---

2. TEX.REV.CIV.STAT.ANN. 5069–1.05 (Vernon Supp.1988), effective September 1, 1987, allows for interest on judgments to be compounded annually.