SOUTHWESTERN BELL TELEPHONE
COMPANY, Appellant,

v.

John George WILSON and Cochise Air
Conditioning and Electrical,
Inc., Appellees.

No. 13-87-336-CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 30, 1988.

Rehearing Denied Feb. 9, 1989.

Appellee's Motion for Rehearing Granted
in Part Feb. 9, 1989.

Appellant's Motion for Rehearing
Denied Feb. 9, 1989.

Appellant's Second Motion for Rehearing
Denied March 9, 1989.

John W. Kelly, Jr., Southwestern Bell Telephone Co., Dallas, Russell H. McMains, McMains & Constant, Corpus Christi, B. Lee Ware, Eileen O'Neill, Vinson & Elkins, Houston, Michael G. Wimer, Cynthia Hollingsworth, Gardere & Wynne, Dallas, for appellant.

Phil Harris, Weslaco, Thomas O. Matlock, Jr., Robert Wellman, Williams, McAllen, for appellees.

Before NYE, C.J., and BENAVIDES and KENNEDY, JJ.

## OPINION

BENAVIDES, Justice.

Southwestern Bell (Bell) appeals from a trial court judgment of more than five million dollars in a case brought by John Wilson and Cochise Air Conditioning and Electrical (Wilson).[1] Wilson was awarded damages for claims of unreasonable collection efforts, intentional and negligent infliction of emotional distress, assault, battery, and false imprisonment, arising from Bell's efforts to collect a $9,500.00 agreed judgment. Bell attacks the liability and damage findings in seventy-three points of error.

Wilson entered into an agreement with Bell in April 1983 to accept payment for telephone bills at Polly's Bus Station in

---

**1.** Genovevo Quintanilla, a defendant in the trial below, also perfected an appeal, but subsequent-ly settled and filed a motion to dismiss his appeal.

Donna, Texas. Wilson owned the bus station which was managed by his wife. In February, 1984, Wilson reported a theft of $10,000 of Bell's money from Polly's. According to Wilson, after the theft, telephone representatives began contacting him in order to pursuade him to pay the money that Bell believed he owed. Bell later filed suit against Wilson and Cochise, which resulted in a $9,500.00 agreed judgment. Bell agreed to postpone execution of its judgment for six months to allow Wilson to pay. The judgment was not paid, and in August 1985, Bell requested a writ of execution. Wilson later filed suit against Bell in connection with the activities occurring during the levy and later amended its pleadings to allege harassment by Bell employees prior to the levy of execution. The trial court, in more than 200 fact findings, held Bell vicariously liable for the wrongful conduct committed by all of the alleged tortfeasors.

Wilson had a history of heart problems which he alleged were seriously aggravated by Bell's collection efforts. He had undergone a triple bypass heart operation in 1981. He alleged that cardiac events which occurred in 1984, as well as other health problems occurring later, were the direct result of wrongful conduct by Bell. Wilson also alleged and the trial court found that Bell was responsible for the failure of Wilson's businesses. Prior to the theft in 1984, Wilson owned Polly's Bus Station as well as Cochise and Brinley's, Inc. Brinley's and Cochise were businesses which engaged in industrial refrigeration and air conditioning.

Bell argues by its first forty-five points of error that it is not vicariously liable for any wrongful conduct. The trial court found that the acts and conduct of Bell were each and all done by a person or persons authorized to act on Bell's behalf. These persons included Constable Quintanilla and Deputy Salinas, lawyers Mark Walker and Mario Barrera, and unnamed Bell employees. The trial court further found that Bell ratified the conduct of the above parties, accepted the benefits of such conduct and caused all damages and that the resulting injuries were proximately caused by such conduct. In determining Bell's liability to Wilson, we will examine Bell's relationship with the three groups whose alleged acts caused Wilson's damages.

### Attorneys

The trial court found Bell responsible for the tortious acts of its attorneys, Walker and Barrera. The trial court concluded that Walker accosted Wilson in the courthouse hallway and demanded $9,500.00 from him. Walker called Wilson a thief. According to the trial court's findings, Mario Barrera told Wilson he was going to ruin him and put him out of business during the levy on Wilson's property. The court found that Barrera verbally and physically assaulted and battered Wilson during the attempted execution on his property. According to the fact findings, Mario Barrera repeatedly poked Wilson on the chest with his hand.

Wilson testified that Barrera handed him the notice of seizure on the day of the levy. According to Wilson, on the day of the execution, Constable Quintanilla and Attorney Barrera surrounded him. Barrera "cussed" him out. Barrera was very irritated and mad. He was pointing his finger at Wilson and poking him in the chest. He said that he was upset with Barrera poking him in the chest and cussing at him. Barrera threatened to ruin him.

Sylvia Escamillo, Wilson's employee, testified that on the day of the execution, Attorney Barrera was furious when he entered Wilson's place of business. She said that they surrounded Wilson. Escamillo testified that the individuals there were not exercising their authority in a proper way. She saw Barrera point his finger at Wilson.

Constable Quintanilla testified that he never heard Barrera tell Wilson that he was going to ruin him or put him out of business. He never saw Barrera poke Wilson in the chest. Deputy Salinas said that Barrera arrived two to three minutes after they did. According to Salinas, Barrera used no abusive or profane language. Salinas said that Barrera did not threaten Wil-

son or tell him he was going to put him out of business. Salinas did not see Barrera assault Wilson.

■ In order to hold Bell liable for the intentional torts of its attorneys, it was incumbent upon Wilson to prove that Barrera was an agent or employee of Bell when the alleged tortious acts were committed. *Norton v. Martin*, 703 S.W.2d 267, 272 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). Wilson must also have proven that the act or acts subjecting the corporation to liability were within the scope of the agent's employment. *Leadon v. Kimbrough Brothers Lumber Co.*, 484 S.W.2d 567, 569 (Tex.1972); *Dieter v. Baker Service Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied). The relationship of attorney and client may be implied from the conduct of the parties. *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 633 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.). An attorney-client relationship is an agency relationship and generally the acts and omissions within the scope of his or her employment are regarded as the clients' acts. *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex.1986). To determine liability of the principal, we determine if the act complained of arose directly out of the business that the servant was hired to do. *Green v. Jackson*, 674 S.W.2d 395, 398 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). A principal is responsible for an unlawful act of his agent where the act is committed by the agent for the purpose of accomplishing the mission entrusted to him by his principal. *Aetna Casualty and Surety Co. v. Love*, 132 Tex. 280, 121 S.W.2d 986, 990 (Comm. App.1938); *Arterbury v. American Bank & Trust Co.*, 553 S.W.2d 943, 949 (Tex.Civ. App.—Texarkana 1977, no writ).

■ The record clearly reflects that attorneys Walker and Barrera were representing Bell in the collection of the $9,500.00 debt. Walker stated in an affidavit in connection with answers to interrogatories that he was the authorized representative and attorney of record for Bell with regard to answering the interrogatories. Barrera attended and participated in the levy. Constable Quintanilla testified that Barrera was the Bell representative present when they seized the Donna Bus Station. On the day of the levy, there was evidence that Barrera handed Wilson the notice of seizure. Bell specifically denied that it was liable in the capacity in which it was sued. However, all the evidence presented pointed to the fact that the attorneys were acting on Bell's behalf. We find that the evidence supports the trial court's agency finding.

Here, the alleged intentional torts were committed in furtherance of the collection efforts for Bell's benefit. While there is no direct evidence that Bell encouraged or ordered the tortious behavior, the acts were committed for the purpose of accomplishing the mission entrusted to the attorneys. This is unlike those cases in which the agent or employee committed a tortious act because of some personal animosity. *See Dieter v. Baker Service Tools*, 739 S.W.2d 405, 407 (Tex.App.—Corpus Christi 1987, writ denied); *Tierra Drilling v. Detmar*, 666 S.W.2d 661, 663 (Tex.App.—Corpus Christi 1984, no writ). We recognize that Wilson had the burden to prove Barrera was in the scope of his employment. There was evidence to support this finding. It is also significant that Bell at no time represented that the attorneys were not acting on their behalf. The attorneys did not testify. Nor did Bell ever repudiate the acts of the attorney or deny responsibility for its acts. The evidence supports the trial court's holding that Bell is liable for the acts of Barrera. Appellant's second through seventh points are overruled.

### Constables

The trial court also made findings that Bell was responsible for the tortious acts of Constable Genovevo Quintanilla and Deputy Guadalupe Salinas. At trial, John Wilson testified that on the day of the levy, Quintanilla and Salinas surrounded him. He said that Salinas pulled a gun on him when he started to leave the office. Wilson said the constables told him that they were special deputies hired by Bell to seize the building. His freedom of movement

was impaired. Deputy Salinas testified that on the day of the levy he was wearing an automatic weapon, but that he did not draw it upon Mr. Wilson. Salinas denied that Wilson was surrounded, harassed or insulted. Deputy Salinas said that he checked the records to determine what property John Wilson owned.

Constable Quintanilla denied that he or Salinas were abusive to Wilson and testified that he was not carrying a weapon that day. He said that he was hired by Bell to serve the writ. There was also testimony that Barrera did not participate in the seizure of the Edinburg property. Barrera arrived while the officers were discussing the Weslaco property with Wilson. Barrera was not present when Salinas allegedly drew his gun.

■ A judgment creditor cannot be liable for the torts of constables levying writs of execution, unless the judgment creditor directs or participates in the execution. *Executive Sportsman Association v. Southwest Bank & Trust Co.*, 436 S.W.2d 184 (Tex.Civ.App.—Waco 1969, writ dism'd); *Pinkston v. Wills*, 200 S.W.2d 843, 846–47 (Tex.Civ.App.—Dallas 1947, no writ). A constable ordinarily levies writs as a part of an official duty. *See* Tex.R. Civ.P. 622, 629, 637.

■ Here, the trial court found that Barrera was present and supervised Quintanilla and Salinas during the seizure of the property. The evidence from which the trial court drew its conclusion was hotly contested. In fact, the testimony is absolutely conflicting with respect to the events occurring on the day of the levy of execution.

Quintanilla testified that they were hired by Bell to execute the writ. Salinas said that on the day of the levy, Barrera arrived at Wilson's office two or three minutes after they did. Salinas told Barrera that the officers had taken possession of the property and inquired what arrangements had been made with Wilson's attorney. Barrera was also with the officers when they levied on the Donna property the next day. Quintanilla testified that Barrera

came to Wilson's office and announced, "We're going to close the place."

There was evidence before the trial court from which it could have determined that Bell, through its agent Barrera, was directing or participating directly in the execution. We agree that the constables were there pursuant to a valid writ of execution. However, the evidence that Salinas drew his gun, and restrained Wilson's movements, while surrounding him, was sufficient to uphold the trial court's findings. While a constable is generally not an agent for the judgment creditor, we find that the evidence in this case is such that the trial court could have found that the officers were acting under the guidance of Bell's agent so as to impose liability on Bell.

### Representatives

■ The trial court also held Bell vicariously liable for the torts of unnamed representatives. Wilson testified at trial that he received 500 telephone calls and had approximately 200 contacts from Bell representatives. Paula Wilson, Wilson's former wife, testified that the telephone company telephoned almost every day. They called him at his home, the bus station, and the Cochise office. The pattern continued for about two months after the bus station burglary. Paula also testified that the representatives would identify themselves as Bell employees when they telephoned. Appellee's daughter, Lisa Wilson, testified that the people from the telephone company were bothering him because of the burglary. Sandra Yanez, Wilson's secretary, testified that she received a lot of calls from individuals who identified themselves as working for the phone company. They called at least once a day from February until Wilson got out of the hospital. She worked there until May 1984 and the calls continued throughout that time.

There was also evidence that Valley Transit and Continental Trailways contacted Wilson regarding the missing money. Wilson could not identify any Bell representatives by name.

The calls were about a $9,500.00 debt to Bell. Three witnesses testified that they

received calls from individuals representing that they were from Bell. Wilson testified that these were harassing telephone calls. There was no admissible evidence introduced by Bell to show otherwise. Agency can be inferred from the fact that the individuals identified themselves as representing Bell and seeking to collect a debt on behalf of Bell. Bell was in a unique position to have denied making calls and visits, but failed to do so. The evidence sufficiently supports vicarious liability upon Bell for the acts of its representatives. We will not substitute our judgment for the trier of fact where there is sufficient evidence presented from which the trial court could reach its conclusions.

Points one through forty-five are overruled.

By points forty-six through fifty, Bell claims the trial court erred in failing to relate the damages to any particular tortious conduct, and basing the judgment on conduct barred by limitations and res judicata.

■ Bell first urges that the trial court erred in failing to relate the specific tortious conduct to specific injuries suffered and damages awarded. Here, the trial court found that the damages incurred by Wilson for all of the wrongful conduct between the date of the burglary and the date of trial were indivisible. Appellant did not complain of the trial court's act or request supplemental findings of fact and conclusions of law allocating damages to specific conduct. Regardless, Wilson's damages resulted from the accumulated effect of the wrongs done; therefore, no harm results from the trial court's failure to assign a specific damage amount to each tortious cause of action.

Likewise, Wilson's claims were not barred by res judicata. Bell complained that Wilson's claims for damages occurring prior to the agreed $9,500.00 judgment are barred, because these claims could have been presented but were not. Bell's pleadings specifically addressed res judicata only as a defense to slander. Appellant's point is waived.

■ Bell also argues that any recovery for wrongful acts occurring before May 28, 1985, is barred by the statute of limitations. Appellants argue that the two-year statute of limitations applies, barring recovery for any acts occurring more than two years before the filing of appellees' last amended original petition. Wilson's first amended petition dealt strictly with wrongful levy and does not mention acts by Bell officials harassing him. The last amended petition, however, specifically alleges causes of action relating from the time of the 1984 burglary. The test to determine whether an amended petition relates back to the filing of an original pleading for the purpose of the tolling statute of limitations is whether the cause of action alleged in the amended petition is wholly based and grows out of a new, distinct or different transaction or occurrence. *Stone v. Brown,* 621 S.W.2d 182 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). We believe that the amended pleadings raising a cause of action for the actions of Bell representatives and the attorneys prior to the levy is a separate and distinct occurrence from the transactions occurring at the time of the levy and does not relate back to the original petition. Therefore, we believe the trial court should have allowed the trial amendment setting up the statute of limitations defense. This error is rendered harmless, however, because the trial court found liability for damages resulting from the conduct of the constables and attorneys during the levy which conduct was not barred by the statute of limitations. The damages for which appellant would be liable given the trial court findings remain the same even when the causes of action occurring prior to the levy are excluded. Appellant's points are overruled.

*Damages*

The trial court awarded to Wilson the following damages:

| | |
|---|---|
| Medical Expenses | $ 7,789.24 |
| Mental Anguish | 1,500,000.00 |
| Physical Pain and Suffering | 500,000.00 |
| Loss of Earning Capacity | 450,000.00 |
| Dimunition of the Value of: | |
| Cochise Stock | 1,500,000.00 |

| | |
|---|---|
| Brinley's Stock | $ 400,000.00 |
| Loss of Tools | 25,000.00 |
| Cochise Personal Property | 322,000.00 |
| Punitive Damages | 900,000.00 |

By points fifty-one through fifty-four, Bell complains the trial court erred in awarding Wilson $1,500,000.00 for the diminution in the value of Cochise stock and $400,000.00 for Brinley stock diminution. Bell argues that there was no evidence to establish the fair market value of either stock.

The evidence showed that Cochise and Brinley's were closely held corporations whose sole shareholder was Wilson. According to Wilson, the corporations were like "two brothers or two sisters". In 1983, Brinley's volume of business was around $350,000.00 to $400,000.00, with a net profit of $75,000.00 to $80,000.00. The net profit of Cochise for the same year was around $200,000.00. In 1984, Brinley's business was about the same, and Cochise's net profit was around $350,000.00 to $400,000.00. In 1985, the net profit of Cochise up to August 7th, the date of levy exceeded $800,000.00 to $900,000.00. Brinley's was $350,000.00. Wilson opined that the value of Brinley's before the seizure was $400,000.00 and the value at the time of trial was zero. Likewise, he opined the value of Cochise was $1,500,000.00. He said this was not the value he put on it, but it was the amount he was offered by "a gentleman in Detroit" in April 1984. Wilson founded Cochise in 1982 and purchased Brinley's in 1983 for $160,000.00. Wilson also testified that his business would have continued to profit because he was negotiating prospective jobs in Louisiana, the Dominican Republic and elsewhere.

■ It is clear that the trial judge used Wilson's statements of value in reaching his conclusions. In order for the property owner to qualify as a witness to damages to property, the owner's testimony must show that it refers to market, rather than intrinsic or some other value. *Porras v. Craig*, 675 S.W.2d 503, 505 (Tex.1984). The requirement is usually met by asking the witness if he is familiar with the market value of the property. *Id.* Here, Wilson never testified to the *market* value of

his property. His testimony was that the $1,500,000.00 was not the value *he* put on the property, but the amount offered by the gentleman from Detroit. Unaccepted offers to purchase are not competent evidence of fair market value. *Hanks v. Gulf, Colorado & Santa Fe Railway Co.*, 159 Tex. 311, 320 S.W.2d 333, 336 (1959); *City of Ft. Worth v. Beaupre*, 617 S.W.2d 828, 831 (Tex.Civ.App.—Ft. Worth 1981, writ ref'd n.r.e.). Wilson's statement concerning value of property was no evidence of market value.

■ Appellant argues that the trial court's findings of market value are insupportable because the court did not consider the liabilities of each corporation. In the absence of testimony or evidence of a reasonable cash market value of corporate stock, the method employed in determining the value of such stock is to determine the difference between the value of the assets and amount of liabilities of the corporation. *Roberts v. Harvey*, 663 S.W.2d 525, 528 (Tex.App.—El Paso 1983, no writ); *Citizens National Bank of Lubbock v. Maxey*, 461 S.W.2d 138 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.). Wilson testified that on August 7, 1985, he owed all of his creditors probably $800,000.00 to $1,000,000.00. He said he owed $160,000.00 on the Cochise real property, $125,000.00 on his house and about $90,000.00 on the bus station, which he claimed was owned by him personally. There was also some evidence of a debt owed to a supplier for $3,934.54 and a tax lien of $1,089.50.

■ This was the only evidence submitted concerning the assets and liabilities of the corporations. This was obviously not the measure of damages intended by Wilson to prove the diminution of the corporations' stock value. Wilson indicates in his brief that there was no other evidence of corporate liabilities assuming the burden was on Bell to offer such proof. The burden of proof was upon Wilson to show diminution of the value of the stock. We have already held his conclusory statements of value to be no evidence of market value. Likewise, the remaining testimony

stating a few corporate liabilities and statements of profit does not constitute evidence from which the trial court could have reached its conclusion.

Appellant's fifty-first through fifty-fourth points are sustained.

By Bell's fifty-fifth and fifty-sixth points of error, it complained of the trial court's finding awarding Wilson $332,000.00 for the loss of Cochise personal property. The judgment exceeds the finding of damages by $10,000.00. Wilson has filed a remittitur in that amount.

Wilson testified at trial that $322,300.60 worth of personal property belonging to Cochise was lost. He did not testify whether this was market value or personal value and did not specify particularly what personal property he was talking about. Here, Wilson's testimony that the value of the Cochise property was $322,000.00 is no evidence of market value. *See Porras*, 675 S.W.2d at 503. Appellant's points with regard to these damages are sustained.

Appellant argues by points fifty-seven and fifty-eight that the trial court's award of $25,000.00 for Wilson's tools was not supported by the evidence. Wilson's conclusory testimony was that the property was worth in excess of $25,000.00. There is no evidence that Wilson was testifying to market rather than personal value. *Porras*, 675 S.W.2d at 503. These points are sustained.

■ By points sixty-two and sixty-three, Bell complains of the award of $450,-000.00 for lost earning capacity. In a personal injury case, the measure of damages for loss of earning capacity is the diminished earning power or capacity of the plaintiff, not his actual lost earnings. *Missouri–Kansas–Texas Railroad Co. v. Alvarez*, 703 S.W.2d 367, 372 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Detar Hospital, Inc. v. Estrada*, 694 S.W.2d 359 (Tex.App. —Corpus Christi 1985, no writ).

■ Wilson testified that prior to the burglary, he was capable of earning $5,000.00 a week. Since then, his income has decreased significantly. Since the date of the levy, he has tried to do some work, but he cannot concentrate on jobs. He cannot do the usual tasks of a workman. He cannot find anyone who wants to hire him.

The amount of damages resulting from impairment of earning capacity must be largely left to the sound discretion of the trier of fact. *Detar Hospital, Inc.*, 694 S.W.2d at 364.

We find the evidence sufficient to support the court's award for loss of earning capacity. Points sixty-two and sixty-three are overruled.

■ By points sixty-four through seventy appellant complains of the award of $1,500,000.00 to Wilson for mental anguish and $500,000.00 for past physical pain and suffering. Wilson testified extensively about the mental anguish and physical pain he suffered because of Bell's activities. His ex-wife and daughter testified to Wilson's pain and suffering. In determining whether this award is excessive, we follow the dictate of *Pope v. Moore*, 711 S.W.2d 622 (Tex.1986), in which the Supreme Court held that a remittitur should only be awarded if the evidence is insufficient. Because personal injury damages are not capable of measurement by a specific standard, these types of damages are uniquely within the province of the trier of fact. *See Tidelands Automobile Club v. Walters*, 699 S.W.2d 939, 945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). This court may not substitute its judgment for that of the fact finder. *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex.1987). After reviewing all the evidence, we find that there is sufficient evidence to support the judgment.

■ Appellant complains of the $7,789.24 award for medical expenses in point seventy-one. Evidence admitted reflected expenses such as $589.00 from McAllen Medical Center, $3,000.00 from Valley Baptist Hospital and $4,042.00 from Knapp Memorial.

Dr. Volpe testified that in her opinion it was probable that the emotional stress of his situation induced episodes of angina. She said that Wilson's physical condition

was exacerbated by Southwestern Bell's conduct. There were medical expense affidavits admitted pursuant to Tex.Civ.Prac. & Rem.Code § 18.001, (Vernon 1986) which state that the services rendered were reasonable and necessary. The total of the amounts stated in the affidavits exceeds the amount awarded by the court. We agree with appellants that some of Dr. Volpe's expenses pre-date the incident in question. However, we have no way of determining whether the trial court's award includes any improper amount.

Appellant's point is overruled.

■ By its seventy-second point of error, Bell complains that the trial court's $900,000.00 award for punitive damages is erroneous. Punitive damages may be awarded against a master or other principal because of an agent if:

(a) the principal authorized the doing and manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the employer or a manager of the employer ratified or approved the act.

*King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950). The term "manager", as applied to a representative of a corporation, implies that the management of the affairs of the company has been committed to him with respect to the enterprise under his charge. *Purvis v. Prattco, Inc.*, 595 S.W. 2d 103, 105 (Tex.1980). Such an agent has been defined as an individual to whom the corporation has confided management of a portion of its business with the authority to employ, direct and discharge servants, and engage in nondelegable duties. *Delta Drilling v. Cruz*, 707 S.W.2d 660 (Tex.App. —Corpus Christi 1986, writ ref'd n.r.e.). Ratification may occur when a principal receives the benefits of the transaction after acquiring full knowledge. *Land Title Co. v. Stigler*, 609 S.W.2d 754, 756 (Tex. 1980). The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's

knowledge of the transaction and his actions in light of such knowledge. *Id.*

Here, the trial court held Bell liable for the actions of three distinct groups. There is no evidence that the unnamed Bell representatives could employ, direct and discharge servants, engage in the performance of nondelegable duties of the master, or manage any part of Bell's business. *See Southwestern Bell Telephone Co. v. Reeves*, 578 S.W.2d 795, 800 (Tex.Civ.App. —Houston [1st Dist.] 1979, writ ref'd n.r. e.). Likewise, the constables were not employed in a managerial capacity.

Attorney Barrera was employed by Bell in a position in which he did perform nondelegable duties. The direction of the collection efforts was entrusted to him. However, he was not employed by Bell in a managerial capacity. He was acting on Bell's behalf in the collection effort as their agent, but was not acting as a manager for Bell.

■ A principal may also be held liable where an employer has ratified the tortious acts of its agents or employees. Appellee argues that the acceptance of the benefits of the tortious conduct after full knowledge constitutes ratification. It was agreed that Wilson owed Bell $9,500.00. It is also clear that Bell had a right to execute on that judgment if not paid. We do not see that Bell's retention of the benefits of the levy constitutes ratification. Where ratification is relied upon to establish the principal's liability for an unauthorized act of an agent, the burden of proof is on the party asserting ratification. *Banctexas Allen Parkway v. Allied American Bank*, 694 S.W.2d 179 (Tex.App.—Houston [14th Dist.] 1985, no writ). Ratification may be express or implied. *Petroleum Anchor Equipment, Inc. v. Tyra*, 419 S.W.2d 829, 834 (Tex.1967). Mere denial of liability does not constitute ratification. *Southwestern Bell Telephone Co. v. Reeves*, 578 S.W.2d at 801. Where silence is the basis of ratification, knowledge of all material facts must be possessed by the principal. *Banctexas Allen Parkway*, 694 S.W.2d at 181.

Appellee argues that Bell's failure to repudiate the acts of the tortfeasors is evidence of ratification. We disagree. There was no evidence to hold Bell liable for exemplary damages on the basis of ratification. Appellant's seventy-second point of error is sustained.

■ Appellant argues by its seventy-third point of error, that the trial court's failure to require Barrera and Walker to withdraw violated its right to due process. The thrust of Bell's argument is that the trial court failed in its duty to ensure the integrity of the judicial process by failing to insist that Barrera and Walker withdraw from the case. We are unable to determine whether any violation of the disciplinary rules was brought to the trial court's attention. Bell selected these attorneys and allowed them to continue their representation even when they knew the attorneys' actions might subject them to liability. This seems to be a matter best resolved between Bell and Walker and Barrera. Appellant's seventy-third point of error is overruled.

The judgment of the trial court in so far as it awarded damages against appellant Southwestern Bell of $1,900,000.00 for diminution of the value of Cochise and Brinley stock, damages for the loss of Cochise personal property in the amount of $322,-000.00, $25,000.00 in tools, and exemplary damages in the amount of $900,000.00 is reversed and rendered; the trial court judgment is otherwise AFFIRMED. Appellant Genovevo Quintanilla's motion to dismiss the appeal is granted and appellant Quintanilla's appeal is hereby dismissed.

The trial court judgment is REVERSED AND RENDERED IN PART and AFFIRMED IN PART. Genovevo Quintanilla's appeal is DISMISSED.

## OPINION ON APPELLEE'S MOTION FOR REHEARING

■ By Wilson's first point on rehearing he argues he is entitled to an award of prejudgment interest. We agree. Prejudgment interest is recoverable by a plaintiff on damages that have accrued at the time of judgment. *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex.1986); *Cavnar v.*

*Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985).

Wilson properly plead and preserved his point on prejudgment interest. We therefore reform our judgment to include that Wilson is entitled to an award of prejudgment interest on the damages recovered and remand the case to the trial court for calculation of the prejudgment interest. Wilson's motion for rehearing is otherwise overruled.